939 So.2d 155 (2006)
GARRICK HATFIELD, Appellant,
v.
AUTONATION, INC., Appellee.
No. 4D06-657.
District Court of Appeal of Florida, Fourth District.
September 27, 2006.
Alex J. Sabo and Seth V. Alhadeff of Bressler, Amery & Ross, P.C., Miramar, for appellant.
Jon K. Stage and Eric K. Gabrielle of Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Fort Lauderdale, for appellee.
STONE, J.
Hatfield appeals a non-final order granting AutoNation, Inc.'s motion for temporary injunction, enjoining Hatfield to do four things: (1) return all materials he misappropriated from AutoNation; (2) refrain from disclosing any information about AutoNation to any person or entity; (3) refrain from engaging in selling, leasing, or servicing any new or used vehicles or parts, either wholesale or retail, until February 1, 2006; and (4) make available for AutoNation's inspection a laptop computer to which he sent emails containing confidential and proprietary information, with the caveat that he could have his own expert present to protect his interests. Hatfield argues that AutoNation failed to show irreparable harm, claiming there is no proof that the information he took was secret, sensitive, or commercially valuable, and asserts that the injunction was based upon the doctrine of inevitable disclosure. Finding support for each element necessary for injunctive relief, we affirm.
Hatfield was the general manager of an AutoNation-owned Mercedes-Benz dealership in Houston, Texas for three years when he entered negotiations for a similar position with a competitor Mercedes dealership. AutoNation filed a complaint in Florida seeking injunctive relief for misappropriation of trade secrets under section 688.001 et seq., Florida Statutes, and including other counts not addressed in this appeal.
Hatfield did not testify at the adversarial evidentiary hearing, but instead filed a brief declaration. On the other hand, AutoNation provided evidence to support each of the following allegations through witness testimony and exhibits. In the weeks immediately preceding his resignation, Hatfield attended a sales conference at AutoNation corporate headquarters. Documentation acquired at this meeting was packed into a box, removed from Hatfield's office, and brought to his home. Less than a week before he resigned, Hatfield downloaded twenty-six computer files containing everything necessary to start up a dealership, as well as inside information regarding AutoNation's sales, payment and incentives to employees by department, and internal programs to stay competitive. The day that he downloaded these files to disk, Hatfield also sent a series of emails to a personal account.
During the hearing, counsel for both sides referenced "inevitable disclosure"  a doctrine applying traditional trade secret misappropriation principles to situations where there has been no actual or threatened misappropriation. Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1326, 1335 (S.D. Fla. 2001). AutoNation had sought an extended period of preclusion from working within the automotive industry, beyond a period contemplated in a contractual, but unenforceable, non-compete provision. The trial court, correctly, did not agree to this, but, in any event, repeatedly emphasized that whether and whenever Hatfield went to the new dealership, it was to be without the benefit of any of the materials he had stolen: "[r]eturn the property, not disseminate or publish any of the stuff he downloaded or unlawfully acquired. . . . I'm going to enter an order of injunction with those two elements, return it and don't disseminate, use or publish." The trial court allowed that a forensic expert could examine the laptop to determine whether the emails had been forwarded or altered prior to deletion.
The order does not rely upon inevitable disclosure, which we deem inapplicable here. Rather, it addresses Hatfield's misappropriation, the manner in which he accomplished it, the irreparable harm AutoNation would suffer due to the time-sensitive and confidential nature of the material, AutoNation's substantial likelihood of success on the merits based on the evidence presented, Florida's public policy interest in protecting trade secrets, and consideration of the relative harms between parties, finding AutoNation's investment in development of its trade secrets to be substantial, and the potential harm caused if used by a nearby competitor unquantifiable in terms of money damages.
The injunction AutoNation sought in this action was only to protect its misappropriated trade secrets and prevent or mitigate the harm disclosure could cause. A temporary injunction requires a showing of four elements: (1) irreparable harm; (2) a clear legal right; (3) an inadequate remedy at law; and (4) that the public interest will be served. A trial court's ruling on a motion for temporary injunction will not be overturned absent a clear abuse of discretion and is entitled to a presumption of correctness. JonJuan Salon, Inc. v. Acosta, 922 So. 2d 1081, 1083 (Fla. 4th DCA 2006).
AutoNation provided evidence that the misbegotten reports and data were not available to the general public, contained highly sensitive information about actual sales and operations at a multitude of dealerships across the country, as well as programs that, if known, could give a competitor an advantage. Hatfield claims to have given everything back.
The fact that AutoNation could only speculate on the magnitude of the ramifications of disclosure of its secrets lends support to the irreparable nature of harm. "[A]n injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." JonJuan, 922 So. 2d at 1084 (quoting Sun Elastic Corp. v. O.B. Indus., 603 So. 2d 516, 517 n. 3 (Fla. 3d DCA 1992)). The trial court had only Hatfield's declaration and his attorney's assertions to the court that he has given everything back and has never disseminated any information. The trial court could conclude these appeasements lacked credibility. Hatfield never acknowledged the twenty-six files that he downloaded or offered any proof to rebut AutoNation's evidence of his actions.
The trial court found that AutoNation had a clear legal right and substantial likelihood of success on these merits, under section 688.003, Florida Statutes  the Florida Uniform Trade Secrets Act. The statute deals not with restrictive covenants and employment by a business' competition, but with misappropriation. It provides injunctive relief when trade secrets have actually been misappropriated, as here, or misappropriation has been threatened. An injunction with respect to stolen business secrets is authorized where it will eliminate commercial advantage derived from the misappropriation and affirmative acts to protect a trade secret can be compelled by court order.
The injunction only included a brief respite from employment as part of the court's fashioning a remedy that would aid AutoNation in minimizing the potential damage by disclosure of time sensitive trade secrets. The injunction was simply about protecting AutoNation's internal procedures and operating figures found within the materials that AutoNation proved Hatfield had stolen.
Questions of inevitable disclosure need not be addressed in this case as, here, there was actual misappropriation. Hatfield did, in fact, take a box of materials, download twenty-six confidential files, and send five emails with attachments including more proprietary data. Inevitable disclosure allows injunctive relief in the absence of actual, or threatened, misappropriation. In the order, the lower court relied on Fountain v. Hudson Cush-N-Foam Corp., 122 So.2d 232 (Fla. 3d DCA 1960), not because it was finding inevitable disclosure in the instant case, but because the remedy it discussed was fitting in this situation.
Lastly, the existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information. The trial court here found that legal remedies would not suffice because of the time-sensitive nature of the information and the possible advantage it could engender. The trial court was well within the limits of its reasoned discretion in entering the injunction. As to other arguments raised, we also find no reversible error or abuse of discretion.
We do not purport to resolve or address any issues in this dispute that were previously resolved or that are presently pending in litigation in the state of Texas.
STEVENSON, C.J. and POLEN, J., concur.
Not final until disposition of timely filed motion for rehearing.