IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0311
════════════
 
In re AutoNation, Inc. and Auto M. Imports North, Ltd., d/b/a 
Mercedes-Benz of Houston-North, Relators
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued October 19, 
2006
 
 
Justice Willett delivered the opinion of 
the Court, in which Chief Justice 
Jefferson, Justice Hecht, Justice Wainwright, Justice Brister, Justice Medina, Justice 
Green, and Justice Johnson joined.
 
Justice O’Neill filed a concurring 
opinion.
 
 
Relator AutoNation, Inc. sued 
Garrick Hatfield in Florida to enforce a covenant not to compete. 
In the employment contract containing the covenant, AutoNation and Hatfield had agreed to litigate any disputes 
arising under the contract in Florida under 
Florida law. 
Hatfield later sued AutoNation in Texas under the contract. 
The trial court declined to dismiss or stay this action and enjoined AutoNation from pursuing its first-filed Florida lawsuit. AutoNation now seeks mandamus relief to enforce the 
mandatory forum-selection clause, and we conditionally grant it.
I. Factual and Procedural Background
AutoNation owns more than 250 automobile dealerships across 
the country. Its corporate headquarters and principal place of business are in 
Florida. In 
1999, AutoNation purchased a dealership in Houston where Hatfield 
worked. In 2002, Hatfield, a Texas resident, transferred to relator Auto M. Imports North, Ltd., d/b/a Mercedes-Benz of 
Houston-North (MBHN), another AutoNation dealership.[1] Hatfield was employed at will as the 
general manager of MBHN.
            
In 2003, Hatfield was required to sign a “Confidentiality, 
No-Solicitation/No-Hire and Non-Compete Agreement” as a condition of continued 
employment. The agreement was between Hatfield and AutoNation “together with its subsidiaries and affiliates,” 
and included a one-year covenant not to compete.[2] A choice-of-law provision stated that the 
agreement would be construed under Florida law, 
and a forum-selection clause provided that all suits arising out of the 
agreement must be filed in Florida.[3]
            
In January 2005, Hatfield left AutoNation to 
accept a position with A-Rod OC, L.P., a competing 
Mercedes-Benz dealership. On February 7, 2005, AutoNation sought enforcement of the non-compete agreement 
by filing a suit for injunctive relief and damages against Hatfield in a Broward 
County, Florida, state court.[4] On March 2, 2005, before learning of the 
Florida 
action, Hatfield and A-Rod filed suit against AutoNation and MBHN in a district court in Harris County, 
Texas. This suit sought a declaratory judgment that the non-compete obligation 
was governed by Texas law and was unenforceable. 
Substantively, the Texas and Florida suits concern the 
same issue of whether the non-compete agreement should be enforced. On or about 
March 14, after learning of the Florida suit, Hatfield and A-Rod filed an 
application for temporary restraining order and motion for temporary injunction 
in the Texas action, arguing that Texas law should govern a Texas resident’s 
non-compete agreement, that AutoNation was attempting 
to circumvent Texas law by pursuing the Florida action, and that the Florida 
court likely would refuse to apply Texas law in deciding the enforceability of 
the non-compete agreement. Hatfield cited an unpublished Florida case, AutoNation, Inc. v. Hankins,[5] a case involving AutoNation and another of its Texas employees, in support of his argument that the 
Florida court would apply Florida non-compete law, which Hatfield contended would 
“yield a result that offends Texas public policy.”
            
On March 31, 2005, AutoNation answered the 
Texas suit and moved to stay it on grounds that 
AutoNation and Hatfield were parties to the 
first-filed Florida action. AutoNation also filed a response to the application for TRO 
and motion for temporary injunction, arguing that the Texas action should be dismissed or stayed because, among 
other reasons, the parties had contractually agreed to litigate their disputes 
in Florida and the Florida action was filed 
first.
            
On April 5, the Texas court held an injunction hearing and 
stated that it was denying AutoNation’s request for a 
stay and Hatfield’s request for an injunction. The next day, however, after a 
telephone hearing prompted by Hatfield’s claim that AutoNation had filed a pleading in the Florida action that 
interfered with the jurisdiction of the Texas court, a claim AutoNation denied, the Texas court signed a temporary 
anti-suit injunction that enjoined AutoNation from 
“taking any further action in connection with the pending lawsuit in Florida . . 
. attempting to enforce purported covenants against competition signed by 
Garrick Hatfield and AutoNation, Inc.,” and “filing 
any future litigation in any non-Texas court seeking to enforce the 
aforementioned covenants against competition.” The court cited the 
Hankins decision in its order and stated that “Texas public policy will likely be thwarted if AutoNation is permitted to litigate enforceability of the 
restrictive covenants solely in Florida and 
solely under Florida law.” The injunction order concluded 
that “it is probable the covenant not to compete is unenforceable in Texas,” and the court 
scheduled trial for June 13, 2005.
            
The next day, AutoNation filed a notice of 
accelerated appeal of the injunction order, and the following week it filed a 
petition for writ of mandamus in the court of appeals. The court of appeals 
denied mandamus relief on grounds that an adequate remedy at law was available 
to AutoNation, namely its earlier-filed interlocutory 
appeal. AutoNation now seeks mandamus relief in this 
Court. It seeks not only relief from the anti-suit injunction but dismissal or 
abatement of the entire case, relief with the intended effect of forcing 
everyone to litigate their dispute in Florida as stipulated in the non-compete 
agreement.
            
The court of appeals proceeded to decide and issue an opinion in the 
interlocutory appeal of the injunction order.[6] The court recognized a general policy 
disfavoring Texas courts from enjoining foreign suits, but 
noted an exception when the injunction is used “to prevent the evasion of 
important public policy.”[7]
            
The court of appeals relied on our 1990 decision in DeSantis v. Wackenhut 
Corp.,[8] in which we held that the enforcement of 
non-compete covenants was a matter of fundamental Texas public policy, governed 
by Texas law. The court noted that Hatfield had presented the trial court with 
the Hankins decision, which indicated that Florida courts would 
apply their own law to this dispute.[9] The court of appeals concluded that 
“[b]ecause the Texas Supreme Court has held that 
fundamental Texas public policy requires application of Texas law to the 
question of enforceability of a non-compete agreement, we are unable to hold 
that the trial court abused its discretion in issuing an injunction to halt the 
Florida proceeding and allow the Texas case to proceed to trial.”[10]
II. Discussion
A. Mandamus Relief on These Facts Is Appropriate
            
AutoNation seeks a writ of mandamus directing 
the trial court to dismiss this suit and thereby enforce the forum-selection 
clause in the parties’ non-compete agreement.[11] In In re Prudential Insurance Co. of America, we 
reaffirmed that mandamus relief will lie if the relator establishes a clear abuse of discretion for which 
there is no adequate appellate remedy.[12]
            
Mandamus relief is available to enforce forum-selection clauses. In In re AIU Insurance Co., decided the same day 
as Prudential, we recognized that such clauses generally “should be given 
full effect” and “should control absent a strong showing that [they] should be 
set aside.”[13] We observed that “[s]ubjecting a party to trial in a forum other than that agreed 
upon and requiring an appeal to vindicate the rights granted in a 
forum-selection clause is clear harassment”[14]—harassment that injures not just the 
non-breaching party but the broader judicial system, injecting inefficiency by 
enabling forum-shopping, wasting judicial resources, delaying adjudication on 
the merits, and skewing settlement dynamics contrary to the parties’ 
contracted-for expectations.[15] Accordingly, forum-selection 
clauses—like arbitration agreements, “another type of forum-selection 
clause”—can be enforced through mandamus.[16]
            
A few months later, in In re 
Automated Collection Technologies, Inc., we again held that failure to 
enforce a contractual forum-selection clause “constitutes a clear abuse of 
discretion for which there is no adequate remedy by appeal.”[17] We therefore granted mandamus relief and 
directed the trial court to dismiss the suit. We held that enforcement of a 
forum-selection clause is “mandatory” unless the opposing party clearly shows 
that enforcement would be unreasonable or unjust, or that the clause is invalid 
for reasons such as fraud or overreaching.[18] And in Automated Collection 
Technologies, unlike here, there was no first-filed lawsuit in the parties’ 
agreed forum.
B. The Parties’ Freely Negotiated 
Contract Should be Respected
            
Our decisions in AIU and Automated Collection Technologies 
regarding the propriety of mandamus relief in forum-selection cases comport with 
the principle that parties generally have the freedom to negotiate agreements as 
they see fit.[19]
            
Hatfield did not demonstrate fraud, overreaching, or undue hardship that 
would provide an exception to the rule that forum-selection clauses are 
generally honored. Instead, relying on our decision in DeSantis, which involved only a choice-of-law 
provision and not a forum-selection clause, Hatfield insists we must disregard 
the forum-selection clause because the pending case concerns a covenant not to 
compete.
            
In DeSantis, a Florida corporation filed suit in Texas against one of its Texas employees for violation of a non-compete 
agreement. The agreement included a choice-of-law provision specifying that 
Florida law 
would govern disputes under the agreement. We held that Texas law should govern 
the dispute despite the choice-of-law provision.[20] We reasoned that Texas law should control because, among other reasons, 
“the law governing enforcement of noncompetition 
agreements is fundamental policy in Texas” and “to apply the law of another state 
to determine the enforceability of such an agreement in the circumstances of a 
case like this would be contrary to that policy.”[21] We therefore held that enforceability of 
the non-compete agreement “must be judged by Texas law, not Florida law.”[22]
            
Our decision today in no way questions the reasoning of DeSantis, but we decline Hatfield’s invitation to 
superimpose the DeSantis choice-of-law analysis 
onto the law governing forum-selection clauses.[23] While DeSantis and the instant case both concern Texas citizens working in Texas for a Florida-based company, there are 
critical distinctions. DeSantis, decided before 
the now-applicable version of the Covenants Not to Compete Act[24] and our recent decision in Sheshunoff construing the Act,[25] did not concern a mandatory 
forum-selection clause or first-filed litigation in the parties’ chosen 
jurisdiction. DeSantis concerned how Texas courts should construe employment 
contracts of Texas employees. We observed that “Texas has a materially greater interest than Florida in deciding 
whether the noncompetition agreement in this case 
should be enforced.”[26] But we have never declared that 
fundamental Texas policy requires that every 
employment dispute with a Texas resident must 
be litigated in Texas. We recognized in AIU that even 
where Texas statutory provisions specify the 
application of Texas law, these provisions are 
irrelevant to the enforceability of a forum-selection clause where no statute 
“requires suit to be brought or maintained in Texas.”[27] Along similar lines, even if DeSantis requires Texas courts to apply Texas law to certain employment disputes, it does not 
require suit to be brought in Texas when a forum-selection clause mandates 
venue elsewhere. No Texas precedent compels us 
to enjoin a party from asking a Florida court 
to honor the parties’ express agreement to litigate a non-compete agreement in Florida, the employer’s headquarters and 
principal place of business.
            
Under Automated Collection Technologies and AIU, our 
controlling precedents on forum-selection clauses, the parties’ bargained-for 
agreement merits judicial respect. This dispute should be heard in the 
first-filed Florida action, as the parties explicitly 
contracted.[28]
            
Finally, we note that today’s decision according deference to the 
first-filed Florida action, besides honoring the parties’ 
contractual commitment, also honors principles of interstate comity. Our federal 
system benefits from a measure of state-to-state comity, which, while not a 
constitutional obligation, is “a principle of mutual convenience whereby one 
state or jurisdiction will give effect to the laws and judicial decisions of 
another.”[29] When a matter is first filed in another 
state, the general rule is that Texas courts stay the later-filed proceeding 
pending adjudication of the first suit.[30] Although the mere pendency of a previously filed action in one state does not, 
in itself, mandate abatement or dismissal in another state, deference seems 
particularly appropriate here. AutoNation’s 
first-filed Florida action is not an attempt to 
litigate a purely Texas matter in a forum that has no relation 
to the parties or their agreement. Florida has 
an interest in this dispute, as described in two published interlocutory 
appellate decisions in the related Florida suit.[31] Here, comity is not pitted against 
fundamental Texas policy,[32] which does not require that every 
non-compete case involving a Texas resident be litigated in our courts, as 
explained above. Accordingly, and without offending DeSantis, we will not presume to tell the forty-nine 
other states that they cannot hear a non-compete case 
involving a Texas resident-employee and decide what law 
applies, particularly where the parties voluntarily agree to litigate 
enforceability disputes there and not here. Our holding today rests squarely on 
the parties’ contractual commitment, but it carries the concomitant benefit of 
extending comity to the Florida courts.
 
III. Conclusion
            
We conditionally grant the writ of mandamus and direct the trial court to 
dismiss this suit in favor of the first-filed Florida action in the parties’ contracted-for 
forum. Tex. R. App. 
P. 52.8(c). We are 
confident that the trial court will comply; our writ will issue only if it does 
not.
 
            
            
            
            
            
            
            
_______________________________________
            
            
            
            
            
            
            
Don R. Willett
            
            
            
            
            
            
            
Justice
 
Opinion delivered: June 29, 2007







[1] 
Relators AutoNation and MBHN 
are sometimes referred to collectively as AutoNation. 
The precise relationship between AutoNation and MBHN 
is unclear from the record. MBHN is described in the original petition as a 
Texas limited partnership and one of AutoNation’s many Texas dealerships, while other pleadings state 
that MBHN is owned by or is an affiliate of AutoNation. Regardless, the non-compete agreement in issue 
expressly applies to affiliates of AutoNation, and 
Hatfield concedes that MBHN is such an affiliate and that the restrictive 
covenants here “were all between Hatfield and AutoNation, together with its subsidiaries and 
affiliates.”

[2] 
The agreement states:
Except where such agreement is prohibited by applicable 
law, Employee hereby agrees that he/she shall not during the period commencing 
on the date hereof and ending one year after the date that Employee’s employment 
or engagement with the Company is terminated (for any reason), directly or 
indirectly, alone or in any other capacity . . . engage in selling, leasing, or 
servicing of any new or used vehicles . . . anywhere (i) within a fifty (50) mile radius of the dealership or 
office at which Employee is employed by the Company or a Subsidiary or Affiliate 
of the Company or (ii) within a ten (10) mile radius of any new or used vehicle 
dealership owned or operated by the Company or any Subsidiary or Affiliate of 
the Company located anywhere in the United States . . . .
The agreement also had a provision prohibiting Hatfield 
from hiring AutoNation’s employees or soliciting its 
customers for a one-year period after termination. 

[3] 
The agreement states:
The Agreement will be governed by and construed in 
accordance with the laws of the State of Florida, without regard to principles of 
conflict of laws. The parties agree that any action, suit or proceeding arising 
out of or relative to this Agreement or the relationship of Employee and Company 
shall be instituted only in the state or federal courts located in Broward 
County, in the [S]tate of Florida, and each party 
waives any objection which such party may now or hereafter have to such venue or 
jurisdictional court in any action, suit or proceeding.
Hatfield and AutoNation also 
entered into a Stock Option Agreement in 2001. This agreement contained a 
non-compete provision that prohibited Hatfield from hiring AutoNation’s employees or soliciting its customers for a 
one-year period after termination, and also contained Florida choice-of-law and 
forum-selection provisions. Hatfield also signed in 2002 a Restrictive Covenants 
and Confidentiality Agreement, containing restrictive covenants like those in 
the 2003 non-compete agreement, and likewise containing Florida choice-of-law and 
forum-selection provisions. The three agreements Hatfield signed all contained 
promises on his part not to disclose confidential information and 
documents.

[4] 
The Florida 
trial court denied Hatfield’s motion to dismiss for lack of personal 
jurisdiction. A Florida appellate court has affirmed the trial 
court’s decision. Hatfield v. AutoNation, Inc., 
915 So.2d 1236 (
Fla. Dist. Ct. App. 2005), 
review denied, 940 So.2d 1124 (Fla. 2006) (table). The trial court also 
entered a temporary injunction against Hatfield based on a finding that he had 
misappropriated AutoNation’s trade secrets. AutoNation, Inc. v. Hatfield, No. 05-02037, 
2006 WL 60547 (Fla. Cir. Ct. Jan. 4, 2006). This 
order was also affirmed on appeal, and the Florida appellate court noted that “the existence of 
Florida’s 
trade secret statute illustrates our state’s interest in protecting businesses 
from theft of confidential information.” Hatfield v. AutoNation, Inc., 939 So.2d 155, 158 (
Fla. Dist. Ct. App. 2006).

[5] 
No. 03-14544 CACE (05), 2003 WL 22852206 (Fla. 
Cir. Ct. Nov. 
24, 2003).

[6] 186 S.W.3d 576. The 
court of appeals stayed proceedings in the trial court pending its decision in 
the interlocutory appeal. After the court of appeals ruled, we issued a stay of 
proceedings in the trial court pending our review of the instant mandamus 
action.

[7] 
Id. at 578 (quoting Golden Rule Ins. 
Co. v. Harper, 925 S.W.2d 649, 651 (Tex. 1996)).

[8] 
793 S.W.2d 670 (Tex. 1990).

[9] 186 S.W.3d at 
579.

[10] Id. at 580–81. As we read the court of 
appeals decision, it did not decide whether Texas and Florida law compel 
different results as to the enforceability of the non-compete covenant, but the 
court did quote language from the trial court’s injunction order, stating that 
“by litigating in Florida under Florida law, Texas public policy may be thwarted 
by obtaining enforcement in Florida of restrictive covenants involving Texas 
citizens [and] Texas places of business that would not be enforceable in Texas.” 
Id. at 
581. We do not reach this question today, but note that our recent 
decision in Alex Sheshunoff Management Services, 
L.P. v. Johnson, 209 S.W.3d 644 (Tex. 2006), modified Texas law governing 
the enforceability of non-compete covenants.

[11] The relief AutoNation seeks by way of mandamus is broader than the 
relief from the temporary injunction that was the subject of its interlocutory 
appeal to the court of appeals. The interlocutory appeal was 
necessarily limited to challenging the anti-suit injunction against litigating 
the dispute in Florida or elsewhere, see Tex. Civ. Prac. & Rem. Code § 
51.014(4), while the mandamus petition to this Court seeks dismissal of the 
entire Texas 
action, or alternatively a stay of the suit. While appeal to the court of 
appeals of the temporary injunction order is final absent Supreme Court 
conflicts or dissent jurisdiction, see Tex. Gov’t Code § 22.225(b)(3), (c), we 
have mandamus jurisdiction in the pending cause regardless of the finality of 
the court of appeals’ ruling in the interlocutory appeal of the temporary 
injunction. We are not divested of mandamus jurisdiction because we lack 
appellate jurisdiction. See Deloitte & Touche 
LLP v. Fourteenth Court of Appeals, 951 S.W.2d 394, 396 (Tex. 1997).

[12] 148 S.W.3d 124, 135–36 (Tex. 2004).

[13] 148 S.W.3d 109, 111–12 (Tex. 2004) (quoting M/S Bremen v. Zapata Off-Shore 
Co., 407 U.S. 1, 13, 15 (1972)).

[14] Id. at 117.

[15] Our decision in AIU relied on the 
United States Supreme Court’s conclusion in The M/S Bremen v. Zapata 
Off-Shore Co. that the correct approach is to enforce a forum-selection 
clause unless the opposing party makes a clear showing that (1) enforcement 
would be unreasonable or unjust; (2) the clause is invalid for reasons such as 
fraud or overreaching; (3) enforcement would contravene a strong public policy 
of the forum where the suit was brought; or (4) “the contractually selected 
forum would be seriously inconvenient for trial.” Id. at 112 (citing M/S 
Bremen, 407 U.S. at 15–17). Hatfield 
asserts the third factor above.

[16] Id. at 115.

[17] 156 S.W.3d 557, 558 (Tex. 2004).

[18] Id. at 559. 

[19] See, e.g., BMG Direct Mktg., Inc. 
v. Peake, 178 S.W.3d 763, 767 (Tex. 2005) (noting 
“Texas’s public policy strongly favoring the freedom of parties to contract”); 
In re Prudential, 148 S.W.3d at 129–30 & n.11 (Tex. 2004) 
(recognizing that “parties have the right to contract as they see fit as long as 
their agreement does not violate the law or public policy”); Lawrence v. C.D.B. Servs., Inc., 44 S.W.3d 544, 553 (Tex. 2001) (“[W]e have 
long recognized a strong public policy in favor of preserving the freedom of 
contract.”).

[20] DeSantis, 
793 S.W.2d at 681.

[21] Id.

[22] Id.

[23] See Holeman v. 
Nat’l Bus. Inst., Inc., 94 S.W.3d 91, 96, 98 (Tex. App.—Houston [14th Dist.] 2002, 
pet. denied) (refusing to “abandon the entire body of law governing the 
enforceability of forum selection clauses” and to “superimpose the choice of law 
analysis of DeSantis onto the law applicable to 
forum selection clauses”).

[24] Tex. Bus. & Com. Code §§ 
15.50–15.52 (Covenants Not to Compete Act); see also Light v. Centel Cellular Co., 883 S.W.2d 642, 643–44 (Tex. 1994).

[25] 209 S.W.3d 644 (Tex. 2006).

[26] DeSantis, 
793 S.W.2d at 679.

[27] AIU, 148 S.W.3d at 114 (discussing 
Texas Insurance Code article 21.42 and former article 21.43 (repealed by 
Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 
31(a), 2001 Tex. Gen. Laws 4208)).

[28] The parties briefed the issue of whether 
A-Rod is bound by the forum-selection clauses. Our instant concern is whether 
A-Rod can independently pursue this declaratory judgment suit in Texas even if Hatfield is compelled to litigate the 
enforceability of the non-compete agreement in 
Florida, or 
whether instead the entire suit should be dismissed. The one-year period for the 
non-compete covenant has now expired. To the extent that A-Rod ever had standing 
to challenge the validity of the non-compete agreement, 
that challenge is now moot. AutoNation has asserted no 
claims against A-Rod in either the Texas or 
Florida 
action. The dispute is not moot as to Hatfield, however, as the issue of damages 
for alleged breach of the agreement remains. The Florida suit includes a claim for damages against 
Hatfield, and as described above the Texas suit has enjoined AutoNation from attempting to enforce the non-compete agreement.

[29] Gannon v. Payne, 706 S.W.2d 304, 306 
(Tex. 1986) 
(internal quotation marks omitted).

[30] E.g., Space Master Int’l, Inc. v. 
Porta-Kamp Mfg. Co., 794 S.W.2d 944, 946–47 (Tex. 
App.—Houston [1st Dist.] 1990, no writ); Alpine Gulf, Inc. v. Valentino, 
563 S.W.2d 358, 359–60 (Tex. App.—Houston [14th Dist.] 1978, writ ref’d n.r.e.); Evans v. 
Evans, 186 S.W.2d 277, 279 (Tex. Civ. App.—San 
Antonio 1945, no writ).

[31] See supra note 4.

[32] See K.D.F. v. Rex, 878 S.W.2d 589, 
595 (Tex. 1994) (noting that “Texas will extend comity to . . . a cooperative 
jurisdiction “so long as that law does not violate Texas public 
policy”).