DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MAPEI CORPORATION,** a foreign corporation, and **SOUTHEASTERN PRINTING COMPANY, INC.,** a Florida corporation,
Appellants,

v.

**J.M. FIELD MARKETING, INC,** a Florida corporation,
Appellee.

No. 4D19-2380

[May 13, 2020]

Appeal and cross-appeal of nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. CACE17-013715.

James H. Wyman of Hinshaw & Culbertson LLP, Coral Gables, and David H. Levitt of Hinshaw & Culbertson, LLP, Chicago Illinois, for appellants.

Gary S. Phillips and Jeffrey B. Shalek of Phillips, Cantor & Shalek, P.A., Hollywood, for appellee.

MAY, J.

Mapei Corporation ("Mapei") and Southeastern Printing Company, Inc. ("SPCI"), appeal a temporary injunction in favor of J.M. Field Marketing, Inc. ("JM"). JM cross-appeals and argues the circuit court erred in failing to extend the injunction to Mapei's and SPCI's continued use of its trade secret. We affirm the temporary injunction on direct appeal. We agree with JM on the cross-appeal and remand the case for the court to enjoin Mapei's and SPCI's continuing use of JM's trade secret.

Mapei is a global chemical construction product company. Its marketing department uses a fulfillment program to support its sales force in its different business units. JM is a full-service fulfillment and marketing firm. It developed a proprietary web-based inventory management software program called All In View ("AIV"), which it used in its service for Mapei.

Only JM's employees and clients with passwords can access AIV. It controls each user's specific and limited permissions and areas of access. Before it will demonstrate the full system, a potential client must sign a confidentiality agreement. When potential clients become actual clients, they must sign another confidentiality agreement.

AIV provides budget management, real time inventory tracking, reporting, and full-service customer care options. To track usage and protect the confidential nature of its program, JM maintains logs of each user's entry into the system, tracking the pages on the website the user visits, the activities performed, and the time spent on a page.

JM created a personalized website for Mapei, using its AIV software, which Mapei used from 2009 to 2017. In October 2012, JM and Mapei executed a Services Agreement that contained the following confidentiality provision:

> (b) Integrated Collateral Management System. Customer agrees to maintain in confidence all information related to the JM [] WBIM1 system. Customer agrees to pursue the same security measures as it uses to protect its own confidential technical information, provided that such measures shall be at least commercially reasonable for such purpose. Customer further agrees not to disclose such information to anyone other than those of its employees, and such contractors as JM [] may approve, under non-disclosure obligations, who have a need to know such information.

In the summer of 2016, Mapei became dissatisfied with JM's services and decided to use SPCI instead for its fulfillment services. SPCI licensed its software from a company named Propago, whose software program called "Argosy" was available for purchase on the open market. Mapei provided SPCI information to permit Argosy to be customized to meet Mapei's business needs. Mapei provided notice of termination of the JM contract on May 2, 2017.

According to JM, Mapei scraped and gathered information from the AIV software system and provided it to SPCI to mimic AIV and obtain the same services at a lower price. JM alleged that Mapei made unusual email requests for information beyond its entitlement during this time and logged into its password-protected website to demonstrate the appearance of the site to SPCI for its modifications. It contends SPCI knew it was using confidential proprietary information, and that Mapei and SPCI intended to or were using the misappropriated information for their own benefit and

2

to benefit JM's competitors.

JM sued Mapei and SPCI alleging counts for: (1) account stated for services rendered; (2) breach of contract; (3) breach of the confidentiality provision; (4) violation of section 688.004, Florida Statutes (2017); and (5) temporary and permanent injunctive relief for violation of section 688.003, Florida Statutes (2017).

JM also filed an emergency motion for temporary injunction seeking to enjoin Mapei and SPCI from using confidential trade secret information to their benefit in any manner that would damage JM, including the use of trade secrets to benefit Mapei or any other SPCI clients. The circuit court held a four-day evidentiary hearing on the emergency motion.

The essence of JM's case was that Mapei demonstrated AIV to SPCI and provided confidential and protected links and login information along with detailed reports in violation of its confidentiality agreement and trade secret law. The circuit court granted JM's motion for temporary injunction in part and denied it in part. The court ruled that AIV constitutes a trade secret by statutory definition under sections 688.002(4)(a) and (b), Florida Statutes (2017). It also found that Mapei and SPCI misappropriated JM's trade secret.

More specifically, the court found:

> [A]n employee of Mapei provided links, passwords, login information and reports to SPCI. Further, the employee provided this information without ever informing JM [] or seeking permission from JM []. Mapei had contractually agreed not to disclose this information, or provide access to this information, without first obtaining the permission of JM []. Specifically, the agreement provided: "Customer agrees to maintain in confidence all information related to the JM [] WBIM system." Contrary to this agreement, Mapei unilaterally, secretly, and systematically shared information related to [AIV] with SPIC.
>
> SPCI knew or should have known that the information was protected from disclosure because they needed the employee's user name and password to access the system. Additionally, SPCI likewise requires confidentiality agreements before its own clients may access its computer systems.
>
> Mapei and SPCI improperly shared protected information.

3

Mapei breached its duty to maintain the confidentiality of the entire [AIV] computer system. SPCI knew or should have known that it was using a password to gain access to a competitor's program. SPCI knew that it was observing the functionality of a password protected website and knew or reasonably should have known that the information provided by Mapei, including the information on Mapei's personalized website, was confidential proprietary information. Further, SPCI shared this confidential information with Propago.

Based on these findings, the circuit court found that JM met its burden of proof for entry of a temporary injunction against Mapei and SPCI pertaining to any further disclosure of the proprietary or confidential information of JM. It demonstrated a substantial likelihood of success on the merits and irreparable harm. The court also found that it was in the public's interest to protect JM's trade secrets. However, the court declined to grant the "broad" injunctive relief JM sought, including enjoining SPCI from performing further acts relating to the shipping and fulfillment of materials for Mapei. It explained,

First, the [c]ourt finds that, unlike the evidence clearly demonstrating disclosure, [JM's] proof as to the improper use of the [its] proprietary information does not rise to the high level needed to allow temporary injunctive relief. Further, the [c]ourt is not convinced that [JM] lacks an adequate remedy at law or that the continuation of the Mapei/SPCI relationship as it currently exists will result in irreparable harm to the plaintiff. . . . Moreover, if this [c]ourt were to order the requested relief, such an order rather plainly would run afoul of the binding Fourth District precedent that forbids temporary injunctive relief that goes beyond merely preserving the status quo. The status quo includes a business relationship between Mapei and SPCI. Enjoining SPCI from performing any further acts relating to the shipping and fulfillment of marketing materials for Mapei would disassemble the status quo, not preserve it. The [c]ourt declines to enter such a broad injunction.

The circuit court enjoined Mapei and SPCI from "disclosing or causing to disclose any proprietary or confidential information of [JM] and/or aiding, abetting, encouraging or inducing any other parties to disclose any proprietary or confidential information of JM []." The court did not address JM's request to temporarily enjoin the continuing use of its trade secrets by Mapei and SPCI. It denied the request to enjoin SPCI from further acts

relating to the shipping and fulfillment of marketing materials for Mapei. Mapei and SPCI now appeal.

An order granting or denying temporary injunctive relief is reviewed for abuse of discretion as to its factual findings. *Telemundo Media, LLC v. Mintz*, 194 So. 3d 434, 435 (Fla. 3d DCA 2016). Review is de novo for the court's legal conclusions. *Picture it Sold Photography, LLC v. Bunkelman*, 287 So. 3d 699, 702 (Fla. 4th DCA 2020).

To be entitled to a temporary injunction, the movant must show the following elements: (1) irreparable harm; (2) lack of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) that temporary injunctive relief will serve the public interest. *Donoho v. Allen-Rosner*, 254 So. 3d 472, 474 (Fla. 4th DCA 2018).

JM sought a temporary injunction based on misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"). A plaintiff alleging misappropriation must prove: (1) that it possessed a trade secret and took reasonable steps to protect its secrecy; and (2) the trade secret was misappropriated, either by one who knew or had reason to know the trade secret was improperly obtained or who used improper means to obtain it. § 688.002(2), Fla. Stat. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

Mapei and SPCI first argue that JM did not establish that AIV constituted a trade secret. The FUTSA defines the term:

> 4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 688.002(4), Florida Statutes.

Mapei and SPCI argue that JM was too vague and inclusive in asserting a trade secret status to its entire AIV without identifying precisely which trade secrets existed in its website, apart from the ordinary information

5

found on product-ordering websites such as login screens, product description screens, carts and other items. They cited several federal cases, primarily relying on *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).

There, a provider of medical business management software sued a competitor and former customer, claiming misappropriation of its trade secrets and tortious interference with contract. The federal district court entered summary judgment for the defendants. On appeal, the Seventh Circuit concluded that the plaintiff failed to prove trade secret misappropriation because it effectively claimed that "all information in or about its software is a trade secret." *Id.* That claim was overbroad and did not satisfy the statutory definition of trade secrets.

JM responds that *IDX* is easily distinguished. Here, JM introduced into evidence a 51-page screen capture of a significant reproduction of its system, which demonstrated and explained AIV's proprietary functions and layout, unique abilities capable of being performed on the back end of the system, user permissions to view pages and products, order materials, etc. Each order and piece of paper can be traced back to a single inventory, and pending orders can be modified to reduce product prior to arrival. These features are unique and not well-known or available in the market. Altogether, this makes AIV a protected trade secret. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39, cmt. f (AM. LAW. INST. 2019) ("The fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.").

JM relies on *Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284 (11th Cir. 2003). There, the court stated that "even if all of the information is publicly available, a unique combination of that information, which adds value to the information, also may qualify as a trade secret." *Id.* at 1291 (citing *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998)). JM's principal testified that AIV "allows for detailed processes to be completed in a simplified fashion. . . . I think one of the biggest part[s] of it is the design behind. It's not essentially as simple as the code, but how the pieces are put together."

Competent substantial evidence supported the circuit court's finding that AIV constituted a system protected by trade secret laws.

Mapei and SPCI next argue the court relied on disclosed information that did not constitute a trade secret because it did not consist of "information that derives economic value from *not* being readily

ascertainable by others." *Liberty Am. Ins. Grp., Inc. v. Westpoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1287 (M.D. Fla. 2001) (citing § 688.002(4), Fla. Stat.). The five Excel spreadsheets presented by JM contained Mapei's data. They also point to testimony that it was "silly" to conclude that the layout of the spreadsheets as printouts or in AIV constituted confidential information or trade secrets.

JM responds that more than mere spreadsheets and Mapei data supported its trade secrets claim. The five detailed spreadsheets contained back end reports inaccessible to all users. They were made available only to specified users. While Mapei may have owned the data input into AIV, how that data was compiled and manipulated constituted JM's trade secret.

JM compares its case to *QSRSoft, Inc. v. Restaurant Tech., Inc.*, No. 06-C-2736, 2006 WL 2990432 (N.D. Ill. Oct. 19, 2006). There, the federal district court found that QSRSoft was likely to succeed in establishing trade secrets protecting its DotComm System not known to competitors in the industry. *Id.* at *6. Although McDonald's franchisees owned the data stored on QSRSoft's computers, "how QSRSoft compiles and manipulates the data" was not known in the industry. *Id.* And, it took reasonable measures to protect its trade secrets from the general public and competitors by password protecting its website, using licensing agreements, and employing other practices. *Id.* Here, JM instituted password protections and included a confidentiality provision in its agreement with Mapei.

Mapei and SPCI argue that JM did not prove misappropriation and the circuit court's finding was based on an improper stacking of inferences. They concede however that direct evidence of misappropriation is difficult to prove in trade secret cases and can be based on circumstantial evidence. *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600–01 (6th Cir. 2005). JM responds that Mapei sent detailed reports that could only have been generated by JM or from its back end of AIV to Argosy, which then sent an entry link, username, and password to the SPCI account manager. That link was widely shared throughout SPCI without JM's permission.

The circuit court found that Mapei had contractually agreed not to disclose information or provide access to AIV without first obtaining JM's permission. Despite this obligation, Mapei and SPCI shared protected information. It found that SPCI knew or should have known that it was using a password to gain access to AIV and that it was confidential proprietary information. SPCI then shared that information with Propago.

The circuit court properly inferred through circumstantial evidence that the entry link was not provided solely to capture images, and that SPCI went beyond data accessible through the front end of AIV. The evidence supports the court's inference that SPCI, with the knowledge and consent of Mapei, placed that information and functionality into the hands of Propago. There was no improper stacking of inferences.

Mapei and SPCI's final argument is that the circuit court erred in finding that their misappropriation of JM's trade secrets would cause irreparable harm. They recognize that "[t]he presumption of irreparable injury, and thus the enjoinability of the [defendant's] conduct, attaches only after the [plaintiff] has proved the use of specific trade secrets." *Lovell Farms, Inc. v. Levy*, 641 So. 2d 103, 105 (Fla. 3d DCA 1994). They argue the presumption was improper because there was no evidence that they sought to do more than simply use the trade secrets, rather than disseminate them further.

JM responds that the element of irreparable harm was properly presumed on the evidence of trade secrets and misappropriation by Mapei and SPCI. The AIV was not available to the general public and was shown to contain sensitive information protected by trade secrets. If shared with competitors, it could give them a competitive advantage. And, the evidence showed that Mapei disseminated the trade secrets to SPCI, and SPCI sent the trade secret information to the Propago web designer, a direct competitor of JM.

JM cites our decision in *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155 (Fla. 4th DCA 2006), where AutoNation sought an injunction to protect its internal procedures and operating figures contained within the materials stolen by its general manager Hatfield. *Id.* at 158. "The fact that AutoNation could only speculate on the magnitude of the ramifications of disclosure of its secrets lends support to the irreparable nature of harm." *Id.* at 157. As in *Hatfield*, the circuit court here did not err in presuming irreparable harm.

### *Cross-Appeal*

JM argues on cross-appeal that the circuit court erred in failing to extend its temporary injunction to prevent Mapei and SPCI from using its trade secrets for their own benefit. The court enjoined them only from "disclosing or causing to disclose, any proprietary or confidential information of JM [], or from aiding and abetting, encouraging, or inducing any party to disclose proprietary or confidential information of JM []."

8

The circuit court decided that a broader injunction would prevent Mapei and SPCI from continuing their existing relationship and would go beyond the status quo intended for temporary injunctive relief. *See Bautista REO U.S., LLC v. ARR Invs., Inc.*, 229 So. 3d 362, 365 (Fla. 4th DCA 2017). The court found the broader injunction was unwarranted because JM failed to demonstrate the high level of proof needed to enjoin business activities between SPCI and Mapei or that their continued relationship resulted in irreparable harm to JM. This was error. To allow Mapei and SPCI to continue their use of unauthorized property would defeat the purpose of the temporary injunction and cause JM to suffer irreparable harm.

*Annex Industrial Park, LLC v. Corner Land, LLC*, 206 So. 3d 739 (Fla. 3d DCA 2016) supports JM's position. There, the Third District affirmed a temporary injunction that prohibited a heavy-equipment storage business from using a portion of a neighboring property owner's property for vehicular access. The court held the temporary injunction properly protected the property owner's rights by enjoining an ongoing trespass, even if the injunction has the effect of disrupting the status quo. *Id.* at 741.

Here, JM demonstrated entitlement to a temporary injunction against ongoing and continued use of its trade secrets by Mapei and SPCI. This would not necessarily disturb their business relationship or exceed the limits of temporary injunction law. The court erred in refusing to temporarily enjoin the continued use of JM's trade secrets by these two entities.

*Affirm temporary injunction; Reverse and remand on cross-appeal for entry of an amended order that temporarily enjoins Mapei and SPCI from continuing use of the trade secrets in AIV.*

LEVINE, C.J., and FORST, J., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**

9