In re AUTONATION, INC. and Auto M.
Imports North, Ltd., d/b/a Mercedes–
Benz of Houston–North, Relators.

No. 05–0311.

Supreme Court of Texas.

Argued Oct. 19, 2006.

Decided June 29, 2007.

Ruth Ann Norton Daniels, Jonni Lynn Walls, Amanda Maxine Inabnett, Gibson McClure Wallace & Daniels, L.L.P., Charles T. Frazier Jr., Cowles & Thompson, P.C., Dallas, for Relators.

Andrew S. Golub, Amy Elizabeth Hawk, J.W. Beverly, Dow, Golub, Berg & Beverly, LLP, Geoffrey Alan Berg, Houston, Craig T. Enoch, Winstead Sechrest & Minick, P.C., Austin, for Real Party in Interest.

Justice WILLETT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, Justice GREEN, and Justice JOHNSON joined.

Relator AutoNation, Inc. sued Garrick Hatfield in Florida to enforce a covenant not to compete. In the employment contract containing the covenant, AutoNation and Hatfield had agreed to litigate any disputes arising under the contract in Florida under Florida law. Hatfield later sued AutoNation in Texas under the contract. The trial court declined to dismiss or stay this action and enjoined AutoNation from pursuing its first-filed Florida lawsuit. AutoNation now seeks mandamus relief to enforce the mandatory forum-selection clause, and we conditionally grant it.

## I. Factual and Procedural Background

AutoNation owns more than 250 automobile dealerships across the country. Its corporate headquarters and principal place of business are in Florida. In 1999, AutoNation purchased a dealership in Houston where Hatfield worked. In 2002, Hatfield, a Texas resident, transferred to relator Auto M. Imports North, Ltd., d/b/a Mercedes–Benz of Houston–North (MBHN), another AutoNation dealership.[1] Hatfield was employed at will as the general manager of MBHN.

In 2003, Hatfield was required to sign a "Confidentiality, No–Solicitation/No–Hire and Non–Compete Agreement" as a condi-

---

1. Relators AutoNation and MBHN are sometimes referred to collectively as AutoNation. The precise relationship between AutoNation and MBHN is unclear from the record. MBHN is described in the original petition as a Texas limited partnership and one of AutoNation's many Texas dealerships, while other pleadings state that MBHN is owned by or is an affiliate of AutoNation. Regardless, the non-compete agreement in issue expressly applies to affiliates of AutoNation, and Hatfield concedes that MBHN is such an affiliate and that the restrictive covenants here "were all between Hatfield and AutoNation, together with its subsidiaries and affiliates."

tion of continued employment. The agreement was between Hatfield and AutoNation "together with its subsidiaries and affiliates," and included a one-year covenant not to compete.[2] A choice-of-law provision stated that the agreement would be construed under Florida law, and a forum-selection clause provided that all suits arising out of the agreement must be filed in Florida.[3]

In January 2005, Hatfield left AutoNation to accept a position with A–Rod OC, L.P., a competing Mercedes–Benz dealership. On February 7, 2005, AutoNation sought enforcement of the non-compete agreement by filing a suit for injunctive relief and damages against Hatfield in a Broward County, Florida, state court.[4] On March 2, 2005, before learning of the Florida action, Hatfield and A–Rod filed suit against AutoNation and MBHN in a district court in Harris County, Texas. This suit sought a declaratory judgment that the non-compete obligation was governed by Texas law and was unenforceable. Substantively, the Texas and Florida suits concern the same issue of whether the non-compete agreement should be enforced. On or about March 14, after learning of the Florida suit, Hatfield and A–Rod

2. The agreement states:

> Except where such agreement is prohibited by applicable law, Employee hereby agrees that he/she shall not during the period commencing on the date hereof and ending one year after the date that Employee's employment or engagement with the Company is terminated (for any reason), directly or indirectly, alone or in any other capacity ... engage in selling, leasing, or servicing of any new or used vehicles ... anywhere (i) within a fifty (50) mile radius of the dealership or office at which Employee is employed by the Company or a Subsidiary or Affiliate of the Company or (ii) within a ten (10) mile radius of any new or used vehicle dealership owned or operated by the Company or any Subsidiary or Affiliate of the Company located anywhere in the United States. . . .

The agreement also had a provision prohibiting Hatfield from hiring AutoNation's employees or soliciting its customers for a one-year period after termination.

3. The agreement states:

> The Agreement will be governed by and construed in accordance with the laws of the State of Florida, without regard to principles of conflict of laws. The parties agree that any action, suit or proceeding arising out of or relative to this Agreement or the relationship of Employee and Company shall be instituted only in the state or federal courts located in Broward County, in the [S]tate of Florida, and each party waives any objection which such party may now or hereafter have to such venue or jurisdic-

> tional court in any action, suit or proceeding.

Hatfield and AutoNation also entered into a Stock Option Agreement in 2001. This agreement contained a non-compete provision that prohibited Hatfield from hiring AutoNation's employees or soliciting its customers for a one-year period after termination, and also contained Florida choice-of-law and forum-selection provisions. Hatfield also signed in 2002 a Restrictive Covenants and Confidentiality Agreement, containing restrictive covenants like those in the 2003 non-compete agreement, and likewise containing Florida choice-of-law and forum-selection provisions. The three agreements Hatfield signed all contained promises on his part not to disclose confidential information and documents.

4. The Florida trial court denied Hatfield's motion to dismiss for lack of personal jurisdiction. A Florida appellate court has affirmed the trial court's decision. *Hatfield v. AutoNation, Inc.,* 915 So.2d 1236 (Fla.Dist.Ct. App.2005), *review denied,* 940 So.2d 1124 (Fla.2006) (table). The trial court also entered a temporary injunction against Hatfield based on a finding that he had misappropriated AutoNation's trade secrets. *AutoNation, Inc. v. Hatfield,* No. 05–02037, 2006 WL 60547 (Fla.Cir.Ct. Jan. 4, 2006). This order was also affirmed on appeal, and the Florida appellate court noted that "the existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information." *Hatfield v. AutoNation, Inc.,* 939 So.2d 155, 158 (Fla. Dist.Ct.App.2006).

filed an application for temporary restraining order and motion for temporary injunction in the Texas action, arguing that Texas law should govern a Texas resident's non-compete agreement, that AutoNation was attempting to circumvent Texas law by pursuing the Florida action, and that the Florida court likely would refuse to apply Texas law in deciding the enforceability of the non-compete agreement. Hatfield cited an unpublished Florida case, *AutoNation, Inc. v. Hankins,*[5] a case involving AutoNation and another of its Texas employees, in support of his argument that the Florida court would apply Florida non-compete law, which Hatfield contended would "yield a result that offends Texas public policy."

On March 31, 2005, AutoNation answered the Texas suit and moved to stay it on grounds that AutoNation and Hatfield were parties to the first-filed Florida action. AutoNation also filed a response to the application for TRO and motion for temporary injunction, arguing that the Texas action should be dismissed or stayed because, among other reasons, the parties had contractually agreed to litigate their disputes in Florida and the Florida action was filed first.

On April 5, the Texas court held an injunction hearing and stated that it was denying AutoNation's request for a stay and Hatfield's request for an injunction. The next day, however, after a telephone hearing prompted by Hatfield's claim that AutoNation had filed a pleading in the Florida action that interfered with the jurisdiction of the Texas court, a claim AutoNation denied, the Texas court signed a temporary anti-suit injunction that enjoined AutoNation from "taking any further action in connection with the pending lawsuit in Florida ... attempting to enforce purported covenants against competition signed by Garrick Hatfield and AutoNation, Inc.," and "filing any future litigation in any non-Texas court seeking to enforce the aforementioned covenants against competition." The court cited the *Hankins* decision in its order and stated that "Texas public policy will likely be thwarted if AutoNation is permitted to litigate enforceability of the restrictive covenants solely in Florida and solely under Florida law." The injunction order concluded that "it is probable the covenant not to compete is unenforceable in Texas," and the court scheduled trial for June 13, 2005.

The next day, AutoNation filed a notice of accelerated appeal of the injunction order, and the following week it filed a petition for writ of mandamus in the court of appeals. The court of appeals denied mandamus relief on grounds that an adequate remedy at law was available to AutoNation, namely its earlier-filed interlocutory appeal. AutoNation now seeks mandamus relief in this Court. It seeks not only relief from the anti-suit injunction but dismissal or abatement of the entire case, relief with the intended effect of forcing everyone to litigate their dispute in Florida as stipulated in the non-compete agreement.

The court of appeals proceeded to decide and issue an opinion in the interlocutory appeal of the injunction order.[6] The court recognized a general policy disfavoring Texas courts from enjoining foreign suits, but noted an exception when the injunction is used "to prevent the evasion of important public policy."[7]

---

**5.** No. 03–14544 CACE (05), 2003 WL 22852206 (Fla.Cir.Ct. Nov. 24, 2003).

**6.** 186 S.W.3d 576. The court of appeals stayed proceedings in the trial court pending its decision in the interlocutory appeal. After the court of appeals ruled, we issued a stay of proceedings in the trial court pending our review of the instant mandamus action.

**7.** *Id.* at 578 (quoting *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996)).

The court of appeals relied on our 1990 decision in *DeSantis v. Wackenhut Corp.*,[8] in which we held that the enforcement of non-compete covenants was a matter of fundamental Texas public policy, governed by Texas law. The court noted that Hatfield had presented the trial court with the *Hankins* decision, which indicated that Florida courts would apply their own law to this dispute.[9] The court of appeals concluded that "[b]ecause the Texas Supreme Court has held that fundamental Texas public policy requires application of Texas law to the question of enforceability of a non-compete agreement, we are unable to hold that the trial court abused its discretion in issuing an injunction to halt the Florida proceeding and allow the Texas case to proceed to trial."[10]

## II. Discussion

### A. Mandamus Relief on These Facts Is Appropriate

■ AutoNation seeks a writ of mandamus directing the trial court to dismiss this suit and thereby enforce the forum-selection clause in the parties' non-compete agreement.[11] In *In re Prudential Insurance Co. of America*, we reaffirmed that mandamus relief will lie if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy.[12]

■ Mandamus relief is available to enforce forum-selection clauses. In *In re AIU Insurance Co.*, decided the same day as *Prudential*, we recognized that such clauses generally "should be given full effect" and "should control absent a strong showing that [they] should be set aside."[13] We observed that "[s]ubjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment"[14]—harassment

---

8. 793 S.W.2d 670 (Tex.1990).

9. 186 S.W.3d at 579.

10. *Id.* at 580–81. As we read the court of appeals decision, it did not decide whether Texas and Florida law compel different results as to the enforceability of the non-compete covenant, but the court did quote language from the trial court's injunction order, stating that "by litigating in Florida under Florida law, Texas public policy may be thwarted by obtaining enforcement in Florida of restrictive covenants involving Texas citizens [and] Texas places of business that would not be enforceable in Texas." *Id.* at 581. We do not reach this question today, but note that our recent decision in *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644 (Tex.2006), modified Texas law governing the enforceability of non-compete covenants.

11. The relief AutoNation seeks by way of mandamus is broader than the relief from the temporary injunction that was the subject of its interlocutory appeal to the court of appeals. The interlocutory appeal was necessarily limited to challenging the anti-suit injunction against litigating the dispute in Florida or elsewhere, *see* TEX. CIV. PRAC. & REM. CODE § 51.014(4), while the mandamus petition to this Court seeks dismissal of the entire Texas action, or alternatively a stay of the suit. While appeal to the court of appeals of the temporary injunction order is final absent Supreme Court conflicts or dissent jurisdiction, *see* TEX. GOV'T CODE § 22.225(b)(3), (c), we have mandamus jurisdiction in the pending cause regardless of the finality of the court of appeals' ruling in the interlocutory appeal of the temporary injunction. We are not divested of mandamus jurisdiction because we lack appellate jurisdiction. *See Deloitte & Touche LLP v. Fourteenth Court of Appeals*, 951 S.W.2d 394, 396 (Tex.1997).

12. 148 S.W.3d 124, 135–36 (Tex.2004).

13. 148 S.W.3d 109, 111–12 (Tex.2004) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 13, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

14. *Id.* at 117.

that injures not just the non-breaching party but the broader judicial system, injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics contrary to the parties' contracted-for expectations.[15] Accordingly, forum-selection clauses—like arbitration agreements, "another type of forum-selection clause"—can be enforced through mandamus.[16]

■ A few months later, in *In re Automated Collection Technologies, Inc.*, we again held that failure to enforce a contractual forum-selection clause "constitutes a clear abuse of discretion for which there is no adequate remedy by appeal."[17] We therefore granted mandamus relief and directed the trial court to dismiss the suit. We held that enforcement of a forum-selection clause is "mandatory" unless the opposing party clearly shows that enforcement would be unreasonable or unjust, or that the clause is invalid for reasons such as fraud or overreaching.[18] And in *Automated Collection Technologies*, unlike here, there was no first-filed lawsuit in the parties' agreed forum.

## B. The Parties' Freely Negotiated Contract Should be Respected

■ Our decisions in *AIU* and *Automated Collection Technologies* regarding the propriety of mandamus relief in forum-selection cases comport ·with the principle that parties generally have the freedom to negotiate agreements as they see fit.[19]

Hatfield did not demonstrate fraud, overreaching, or undue hardship that would provide an exception to the rule that forum-selection clauses are generally honored. Instead, relying on our decision in *DeSantis*, which involved only a choice-of-law provision and not a forum-selection clause, Hatfield insists we must disregard the forum-selection clause because the pending case concerns a covenant not to compete.

In *DeSantis*, a Florida corporation filed suit in Texas against one of its Texas employees for violation of a non-compete agreement. The agreement included a choice-of-law provision specifying that Florida law would govern disputes under the agreement. We held that Texas law should govern the dispute despite the choice-of-law provision.[20] We reasoned that Texas law should control because, among other reasons, "the law governing enforcement of noncompetition agreements

---

**15.** Our decision in *AIU* relied on the United States Supreme Court's conclusion in *The M/S Bremen v. Zapata Off–Shore Co.* that the correct approach is to enforce a forum-selection clause unless the opposing party makes a clear showing that (1) enforcement would be unreasonable or unjust; (2) the clause is invalid for reasons such as fraud or overreaching; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) "the contractually selected forum would be seriously inconvenient for trial." *Id.* at 112 (citing *M/S Bremen*, 407 U.S. at 15–17, 92 S.Ct. 1907). Hatfield asserts the third factor above.

**16.** *Id.* at 115.

**17.** 156 S.W.3d 557, 558 (Tex.2004).

**18.** *Id.* at 559.

**19.** *See, e.g., BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex.2005) (noting "Texas's public policy strongly favoring the freedom of parties to contract"); *In re Prudential*, 148 S.W.3d at 129–30 & n. 11 (Tex.2004) (recognizing that "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy"); *Lawrence v. C.D.B. Servs., Inc.*, 44 S.W.3d 544, 553 (Tex.2001) ("[W]e have long recognized a strong public policy in favor of preserving the freedom of contract.").

**20.** *DeSantis*, 793 S.W.2d at 681.

is fundamental policy in Texas" and "to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy."[21] We therefore held that enforceability of the non-compete agreement "must be judged by Texas law, not Florida law."[22]

Our decision today in no way questions the reasoning of *DeSantis*, but we decline Hatfield's invitation to superimpose the *DeSantis* choice-of-law analysis onto the law governing forum-selection clauses.[23] While *DeSantis* and the instant case both concern Texas citizens working in Texas for a Florida-based company, there are critical distinctions. *DeSantis*, decided before the now-applicable version of the Covenants Not to Compete Act[24] and our recent decision in *Sheshunoff* construing the Act,[25] did not concern a mandatory forum-selection clause or first-filed litigation in the parties' chosen jurisdiction. *DeSantis* concerned how *Texas* courts should construe employment contracts of Texas employees. We observed that "Texas has a materially greater interest than Florida in deciding whether the noncompetition

agreement in this case should be enforced."[26] But we have never declared that fundamental Texas policy requires that every employment dispute with a Texas resident must be litigated in Texas. We recognized in *AIU* that even where Texas statutory provisions specify the application of Texas law, these provisions are irrelevant to the enforceability of a forum-selection clause where no statute "requires suit to be brought or maintained in Texas."[27] Along similar lines, even if *DeSantis* requires Texas courts to apply Texas law to certain employment disputes, it does not require suit to be brought in Texas when a forum-selection clause mandates venue elsewhere. No Texas precedent compels us to enjoin a party from asking a Florida court to honor the parties' express agreement to litigate a non-compete agreement in Florida, the employer's headquarters and principal place of business.

■ Under *Automated Collection Technologies* and *AIU*, our controlling precedents on forum-selection clauses, the parties' bargained-for agreement merits judicial respect. This dispute should be heard in the first-filed Florida action, as the parties explicitly contracted.[28]

---

21. *Id.*

22. *Id.*

23. *See Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 96, 98 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (refusing to "abandon the entire body of law governing the enforceability of forum selection clauses" and to "superimpose the choice of law analysis of *DeSantis* onto the law applicable to forum selection clauses").

24. Tex. Bus. & Com.Code § § 15.50–15.52 (Covenants Not to Compete Act); *see also Light v. Centel Cellular Co.*, 883 S.W.2d 642, 643–44 (Tex.1994).

25. 209 S.W.3d 644 (Tex.2006).

26. *DeSantis*, 793 S.W.2d at 679.

27. *AIU*, 148 S.W.3d at 114 (discussing Texas Insurance Code article 21.42 and former arti-

cle 21.43 (*repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 31(a), 2001 Tex. Gen. Laws 4208)).

28. The parties briefed the issue of whether A–Rod is bound by the forum-selection clauses. Our instant concern is whether A–Rod can independently pursue this declaratory judgment suit in Texas even if Hatfield is compelled to litigate the enforceability of the non-compete agreement in Florida, or whether instead the entire suit should be dismissed. The one-year period for the non-compete covenant has now expired. To the extent that A–Rod ever had standing to challenge the validity of the non-compete agreement, that challenge is now moot. AutoNation has asserted no claims against A–Rod in either the Texas or Florida action. The dispute is not moot as to Hatfield, however, as the issue of damages for alleged breach of the agreement remains. The Florida suit includes a claim for damages

▬▬ Finally, we note that today's decision according deference to the first-filed Florida action, besides honoring the parties' contractual commitment, also honors principles of interstate comity. Our federal system benefits from a measure of state-to-state comity, which, while not a constitutional obligation, is "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another."[29] When a matter is first filed in another state, the general rule is that Texas courts stay the later-filed proceeding pending adjudication of the first suit.[30] Although the mere pendency of a previously filed action in one state does not, in itself, mandate abatement or dismissal in another state, deference seems particularly appropriate here. AutoNation's first-filed Florida action is not an attempt to litigate a purely Texas matter in a forum that has no relation to the parties or their agreement. Florida has an interest in this dispute, as described in two published interlocutory appellate decisions in the related Florida suit.[31] Here, comity is not pitted against fundamental Texas policy,[32] which does not require that every non-compete case involving a Texas resident be litigated in our courts, as explained above. Accordingly, and without offending *DeSantis*, we will not presume to tell the forty-nine other states that they cannot hear a non-compete case involving a Texas resident-employee and decide what law applies, particularly where the parties voluntarily agree

to litigate enforceability disputes there and not here. Our holding today rests squarely on the parties' contractual commitment, but it carries the concomitant benefit of extending comity to the Florida courts.

## III. Conclusion

We conditionally grant the writ of mandamus and direct the trial court to dismiss this suit in favor of the first-filed Florida action in the parties' contracted-for forum. TEX.R.APP. P. 52.8(c). We are confident that the trial court will comply; our writ will issue only if it does not.

Justice O'NEILL filed a concurring opinion.

Justice O'NEILL, concurring.

I agree that forum-selection clauses are presumed valid and enforceable unless the opposing party can clearly show that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111–12 (Tex.2004) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 13–15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134–35 (Tex. 2004). As Hatfield raises only the public-

---

against Hatfield, and as described above the Texas suit has enjoined AutoNation from attempting to enforce the non-compete agreement.

**29.** *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex.1986) (internal quotation marks omitted).

**30.** *E.g., Space Master Int'l, Inc. v. Porta–Kamp Mfg. Co.*, 794 S.W.2d 944, 946–47 (Tex.App.-Houston [1st Dist.] 1990, no writ); *Alpine*

*Gulf, Inc. v. Valentino*, 563 S.W.2d 358, 359–60 (Tex.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Evans v. Evans*, 186 S.W.2d 277, 279 (Tex.Civ.App.-San Antonio 1945, no writ).

**31.** *See supra* note 4.

**32.** *See K.D.F. v. Rex*, 878 S.W.2d 589, 595 (Tex.1994) (noting that "Texas will extend comity to ... a cooperative jurisdiction so long as that law does not violate Texas public policy").

policy exception, we are not confronted with potentially serious fundamental-fairness concerns that might arise should the forum selected be chosen by unfair means or prove inaccessible. *See, e.g., Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232, 234–36 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Hatfield's sole contention is that the strong public-policy concerns we articulated in *DeSantis* will be undermined if the parties' forum-selection clause is enforced and the suit to enforce the covenant not to compete proceeds in Florida. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex.1990) ("[T]he law governing enforcement of noncompetition agreements is fundamental policy in Texas, and [ ] to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy.").

I agree with Hatfield that deciding which noncompete agreements constitute reasonable restraints of trade on employees in this state is a matter of fundamental Texas public policy. *See id.* What is not apparent, however, is that enforcement of the forum-selection clause in this case will result in application of the contractual forum's law in a manner that will undermine Texas public policy. *See* TEX. BUS. & COM. CODE §§ 15.50–15.52 (Covenants Not to Compete Act); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex.2006). Had there been a clear showing to this effect, I might agree with the court of appeals' analysis, or at least would consider the trial court justified had it decided to abate the Texas declaratory judgment action pending the Florida court's decision. But a mere indication that the Florida court intends to apply Florida law does not, without more, justify a Texas court's interference with the par-

ties' chosen forum. For this reason, I concur in the Court's judgment.