NUMBER 13-07-437-CV



COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN RE: GREAT LAKES DREDGE & DOCK COMPANY, L.L.C.


 


On Petition for Writ of Mandamus


 


O P I N I O N



Before Justices Yañez, Rodriguez, and Benavides


Opinion by Justice Benavides



 Relator, Great Lakes Dredge & Dock Company, L.L.C. ("Great Lakes"), requests this
Court to issue a writ of mandamus ordering the Respondent, the Honorable Ricardo
Rodriguez, Jr., (1) to enforce a venue-selection agreement. Finding no abuse of discretion,
we deny Great Lakes's petition.



I. Background

 Nelson Ramos was employed by Great Lakes beginning in 2006. Upon his
employment, he was required to sign a document titled, "Employee Acceptance of Forum
Selection" (hereinafter "the Agreement"). (2) The Agreement provides as follows:

 As a condition of employment with Great Lakes Dredge & Dock Company
LLC, the EMPLOYEE and Great Lakes Dredge & Dock Company, LLC
mutually agree that any claim for personal, emotional, physical, or economic
injury [including death] pursuant to Federal law, general maritime law, the
Jones Act, or the laws of any State, or otherwise arising out of EMPLOYEE'S
employment with Great Lakes Dredge & Dock Company, LLC shall, if ever
made the basis of litigation initiated by EMPLOYEE be filed, at the option of
the EMPLOYEE, in any one of the following jurisdictions only:


 (a) the Circuit Court for the County of DuPage, State of Illinois; or


 (b) The Court designated below in the State of residence of the
EMPLOYEE or in the State in which the accident made the basis of
the lawsuit occurred, as follows:


 STATE STATE COURT

 

 . . . .


 Florida Clay County

 

 . . . .


 Texas District Courts of Harris County, Texas

 

 . . . .


 or


 (c) The United States Federal District Court in the State of residence of
the EMPLOYEE or in the State in which the accident made the basis
of the lawsuit occurred, as follows:


 STATE FEDERAL COURT

 

 . . . .


 Florida Middle District of Florida, Jacksonville Division

 

 . . . .

 

 Texas Southern District of Texas, Houston Division 


 It is undisputed that on May 5, 2006, Ramos signed the Agreement and began
working for Great Lakes. Ramos was laid off on June 10, 2006, at the completion of a
dredging project, but he was rehired on June 19, 2006, to begin another project aboard the
Dredge ILLINOIS, a vessel owned and operated by Great Lakes. Ramos allegedly
sustained injuries aboard that vessel in August 2006.

 On January 23, 2007, Ramos filed suit against Great Lakes in Hidalgo County
District Court, alleging that his injuries were the result of maritime negligence and the
Dredge ILLINOIS's unseaworthiness. Ramos asserted claims under the Jones Act, 46
U.S.C. § 30104 (2006) (formerly codified at 46 U.S.C. app. § 688). (3) Great Lakes
responded with a Motion to Dismiss or, in the alternative, Motion to Transfer Venue and,
subject thereto, Special Exceptions and Answer. Great Lakes argued that the Agreement
mandated that suit be filed in either a state district court in Harris County, Texas, or in the
United States District Court for the Southern District of Texas, Houston Division. (4) 

 Ramos filed a response, arguing that the "mandatory venue provision for the Jones
Act requires Plaintiff's suit to be brought in Hidalgo County; and . . . [t]he forum selection
clause is vague, unjust, and unreasonable." Attached to the response was an affidavit
signed by Ramos, stating that while working on a job in Florida, he was "forced" to sign the
Agreement. He states that he was told by a Great Lakes representative "that if [he] did not
sign the form [he] would be terminated." Finally, he states that he did not receive any
consideration for signing the form. Ramos also filed a short brief setting out authority for
his positions.

 Judge Rodriguez held a hearing on Great Lakes's motion to dismiss or, in the
alternative, transfer. Great Lakes's petition for writ of mandamus states that arguments
were presented at the hearing, but no other evidence was presented. See Tex. R. App. P.
52.7(a)(2). On June 6, 2007, Judge Rodriguez denied Great Lakes's motion to dismiss
without stating the reasons for his ruling. The mandamus proceeding followed.

II. Mandamus Standard

 Mandamus is an extraordinary remedy that is available when the relator
demonstrates that the trial court clearly abused its discretion and that it has an inadequate
remedy by appeal. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)
(orig. proceeding). A trial court abuses its discretion when it "'reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (quoting Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 917 (1985) (orig. proceeding)). A review of a trial
court's legal determinations is not entitled to deference--"a trial court has no 'discretion'
in determining what the law is or applying the law to the facts." Id. at 840. 

 The relator must also show that his or her appellate remedy is inadequate. In re
Prudential, 148 S.W.3d at 135-36. The Texas Supreme Court has explained that this
element requires a practical and prudential analysis, requiring consideration of both public
and private interests. Id. at 136. "An appellate remedy is 'adequate' when any benefits
to mandamus review are outweighed by the detriments. When the benefits outweigh the
detriments, appellate courts must consider whether the appellate remedy is adequate." 
Id. III. Enforceability of Venue Selection Agreement

 Great Lakes asserts that the trial court abused its discretion in refusing to enforce
a forum-selection agreement. Great Lakes argues that, under the Texas Supreme Court's
recent pronouncements, forum-selection agreements are presumptively enforceable, and
Ramos has not raised a valid defense to enforcement. See In re AutoNation, Inc., 228
S.W.3d 663, 668 (Tex. 2007) (orig. proceeding); Michiana Easy Livin' Country, Inc. v.
Holten, 168 S.W.3d 777, 793 (Tex. 2005) ("[E]nforcement of a forum-selection clause is
mandatory absent a showing that 'enforcement would be unreasonable and unjust, or that
the clause was invalid due to fraud or overreaching.'"); In re Automated Collection Tech.,
Inc., 156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding); In re AIU Ins. Co., 148 S.W.3d
109, 111-15 (Tex. 2004) (orig. proceeding). 

 In response, Ramos asserts that the mandatory venue statute in place at the time
suit was filed, former Texas Civil Practice & Remedies Code section 15.018, provided that
Ramos's Jones Act claim could be brought in Hidalgo County, where Ramos resided. 
Additionally, under that same section, suit could not be brought in Harris County. (5) He
argues that, under the Texas Supreme Court's decisions in Leonard v. Paxson (6) and
Fidelity Union Life Ins. Co. v. Evans, (7) a party's pre-suit agreement to set venue in a
particular county that is contrary to a mandatory venue statute is void and unenforceable. 
Great Lakes counters that Leonard and Fidelity were decided prior to the supreme court's
recent trend of enforcing forum-selection agreements and are effectively supplanted. For
the following reasons, we disagree with Great Lakes.

A. Terminology--"Venue" v. "Forum."

 In this case, the parties have used "forum" and "venue" interchangeably. We pause
to note the difference between the two terms to avoid any confusion about our holding. 
Each term has a distinct legal meaning that must be carefully observed, even though in
some instances, Texas case law has muddled the distinction between the two. (8) 
Accelerated Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 68 n.1 (Tex. App.-Dallas
1996, no pet.) ("'[V]enue' has a particular legal meaning in Texas . . . ."), overruled on other
grounds, In re Tyco Elecs. Power Sys., Inc., No. 05-04-01808-CV, 2005 Tex. App. LEXIS
819, at *11-12 & n.1 (Tex. App.-Dallas 2005, orig. proceeding) (mem. op.); see also Liu
v. CiCi Enters., L.P., No. 14-05-00827-CV, 2007 Tex. App. LEXIS 81, at *6-7 (Tex.
App.-Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.) ("The distinction between a
forum selection clause and a venue selection clause is critical."). 

 "Forum" generally refers to a sovereign or a state. See Scott v. Gallagher, 209
S.W.3d 262, 264 (Tex. App.-Houston [1st Dist.] 2006, no pet.) ("[V]enue 'refers to the
propriety of prosecuting, in a particular form, a suit on a given subject matter with specific
parties, over which the forum must, necessarily, have subject-matter jurisdiction.'")
(emphasis added). In contrast, "[a]t common law, 'venue' meant 'the neighborhood, place,
or county in which the injury is declared to have been done or in fact declared to have
happened.'" State v. Blankenship, 170 S.W.3d 676, 681 (Tex. App.-Austin 2005, pet. ref'd)
(quoting Black's Law Dictionary 1557 (6th ed.1991)). In Texas, "venue" refers to the
county in which suit is proper within the forum state. Accelerated Christian Educ., Inc., 925
S.W.2d at 73; Estrada v. State, 148 S.W.3d 506, 508 (Tex. App.-El Paso 2004, no pet.). 
Thus, a "forum"-selection agreement is one that chooses another state or sovereign as the
location for trial, whereas a "venue"-selection agreement chooses a particular county or
court within that state or sovereign.

 Great Lakes does not dispute that under the contract and under federal law, (9) Ramos
has the right to bring his Jones Act claim in Texas state court. In fact, the Agreement
expressly states that the choices provided are entirely "at the option of the EMPLOYEE." 
The only disagreement, it appears, is whether Ramos was required to adhere to the venue
requirements of the Agreement and bring his suit in a Harris County district court. We will
now turn to the arguments. 

B. Early Texas cases refused to enforce pre-suit venue selection agreements in
contravention of mandatory venue statutes based on the "ouster" doctrine
and the policy reasons behind the legislative venue scheme.


 As early as 1919, the Texas Supreme Court refused to enforce an agreement
regarding venue within Texas that contravened the statutory venue scheme. Int'l Travelers'
Ass'n v. Branum, 212 S.W. 630, 631-32 (Tex. 1919). In International Travelers' Ass'n v.
Branum, the plaintiff sued to recover proceeds from an insurance policy in the county of
her residence. Id. The defendant filed a plea of privilege (10) to be sued in Dallas County,
as provided by the insurance application and policy and by the insurance company's
bylaws. Id. at 631. In response, the plaintiff argued that the mandatory venue statute
allowed her the choice to file in the county of her residence or in in any county where the
defendant had an agent or representative, and a contract limiting her ability to choose the
venue as provided by the venue statutes was void as against public policy. Id.; see also
Fidelity, 477 S.W.2d at 537. The court phrased the issue as follows: "the real question
presented by [the defendant's] plea of privilege . . . . is whether a statute giving a plaintiff
the right to sue in several counties can be overridden by a contract undertaking to deprive
him of that right." Branum, 212 S.W. at 631; Fidelity, 477 S.W.2d at 537. 

 The court agreed with the plaintiff, holding that the agreement to limit venue was
void as against public policy. Branum, 212 S.W. at 631. Its holding was based on two
premises. Id. at 631-32. First, it cited the policy behind venue statutes: "The rules to
determine in what courts and counties actions may be brought are fixed, upon
considerations of general convenience and expediency, by general law; to allow them to
be changed by the agreement of parties would disturb the symmetry of the law, and
interfere with such convenience." Id. at 631 (quoting Nute v. Hamilton Mut. Ins. Co., 6 Gray
174 (Mass. 1856)). 

 Second, the court cited what would later be called the "ouster" doctrine, which is
often traced to the United States Supreme Court's decision in Insurance Co. v. Morse. Id.
at 631-32 (citing Ins. Co. v. Morse, 87 U.S. 445, 451 (1874)). There, the Supreme Court
held that a forum selection clause was unenforceable, stating that:

 Every citizen is entitled to resort to all the courts of the country, and to invoke
the protection which all the laws or all those courts may afford him. A man
may not barter away his life, or his freedom, or his substantial rights. In a
criminal case, he can not, as was held in Cancemi's case, 18 N. Y. 128, be
tried in any other manner than by a jury of twelve men, although he consent
in open court to be tried by a jury of eleven men. In a civil case he may
submit his particular suit by his own consent to an arbitration, or to the
decision of a single judge. So he may omit to exercise his right to remove his
suit to a Federal tribunal, as often as he thinks fit, in each recurring case. In
these aspects any citizen may no doubt waive the rights to which he may be
entitled. He can not, however, bind himself in advance by an agreement,
which may be specifically enforced, thus to forfeit his rights at all times and
on all occasions, whenever the case may be presented. That the agreement
of the insurance company is invalid upon the principles mentioned,
numerous cases may be cited to prove. They show that agreements in
advance to oust the courts of the jurisdiction conferred by law are illegal and
void. 

Morse, 87 U.S. at 451 (emphasis added); see Branum, 212 S.W. at 631-32. For these two
reasons, the Texas Supreme Court refused to enforce the venue-selection agreement that
removed the plaintiffs choice of venue. The court reaffirmed its conclusion in 1939 in 
Ziegelmeyer v. Pelphrey, holding that "venue is fixed by law and any [agreement] to
change the law with reference thereto is void." 125 S.W.2d 1038, 1040 (Tex. 1939). 



C. More recent Texas cases rely on the legislature's provision of contractual
venue in specific, limited circumstances and expand upon the traditional
justifications for refusing to enforce venue-selection agreements.

 

 More recently, in Fidelity Union Life Insurance Co. v. Evans, the Texas Supreme
Court again considered the effect of a venue-selection agreement that contravened a
mandatory venue statute. 477 S.W.2d at 535. In that case, Fidelity Union Life Insurance
Company brought suit in Dallas County seeking to enjoin its former agent from violating his
contract. Id. The agent's contract with Fidelity provided for venue of such an action in
Dallas; however, the mandatory venue statute in effect at the time provided for mandatory
venue in "the district or county court of the county in which [the defendant] has its
domicile." Id. at 536. The agent filed a plea of privilege based on this statute. Id. 

 The supreme court cited Branum, noting its holding that "an advance agreement
about venue may not contravene the statutory scheme for fixing venue." Id. The court's
reasoning, however, included more justification than its earlier decision in Branum. See
id. First, the court noted that the venue statutes at the time provided parties the right to
agree to venue only when "the obligation sued upon is to be performed in the particular
county of venue." Id. (citing Tex. Rev. Civ. Stat. Ann. art. 1995, § 5 (current version at
Tex. Civ. Prac. & Rem. Code Ann. § 15.035 (Vernon 2002))). The cases cited to the court
by Fidelity as support for enforcing its venue-selection agreement were under this
provision, and the court held they did not support Fidelity's position. Id. at 536-37. 

 Second, the court discussed the Branum case and the policy reasons for enacting
mandatory venue statutes. Id. at 537. Specifically, it noted that "venue is a matter of
general convenience and expediency, whereas contracts which change the venue rules
disturb the symmetry of the law." Id. It noted that the opinion of the court of civil appeals
below, however, had articulated more policy reasons than those discussed in Branum. Id. 
Specifically, the court of civil appeals below noted that the legislature engages in a policy
choice when it enacts venue rules, necessarily choosing to bestow more favor on either
a plaintiff or defendant in particular cases:

 A party litigating away from home has the same disadvantage whether he is
plaintiff or defendant. When two parties live in different counties, only one
can enjoy the home-county privilege. A choice must be made, and the
legislature has chosen to give that privilege to defendant as a general rule,
subject to enumerated exceptions, and no exception is provided for cases in
which the parties have agreed to suit in a particular county. Tex. Rev. Civ.
Stat. Ann., Art. 1995 (1964). In order to maintain suit away from defendant's
residence, plaintiff has the burden to prove that his case falls within one of
the exceptions, and doubts must be resolved in favor of the general rule.
Moreover, the defendant's privilege of defending in his home county is such
a valuable right that it must be protected even at the cost of two trials of the
same issue. In Branum the public policy against permitting parties to contract
away procedural rights was decisive in favor of a plaintiff who was entitled to
a venue privilege under one of the exceptions. We hold that the same policy
applies even more strongly to a defendant who is entitled to a venue
privilege under the general rule. In this case, since we have also the
mandatory provisions of Article 4656 requiring an injunction to be returnable
to defendant's county, the policy against the contractual provision in question
is especially strong. 


Fid. Union Ins. Co. v. Evans, 468 S.W.2d 869, 872 (Tex. Civ. App.-Dallas 1971), aff'd, 477
S.W.2d 535 (Tex. 1972). Based on this additional reasoning, the supreme court held that 

 the fixing of venue by contract, except in such instances as permitted by
Article 1995, § 5, is invalid and cannot be the subject of a private contract.
. . . Article 4656 placed venue for an injunction suit in the county in which
defendant Evans had his domicile; we hold that a variance of that statute is
not the subject of a private contract. 


Fid. Union Life Ins. Co., 477 S.W.2d at 537. 


 Most recently in 1983, in Leonard v. Hon. Sam Paxson, the Texas Supreme Court
analyzed a venue-selection agreement that conflicted with the Texas Family Code's
mandatory venue provisions. 654 S.W.2d 440, 441 (Tex. 1983) (orig. proceeding). In that
case, the parties agreed, incident to their divorce, that all acts contemplated by the
agreement would be performed in El Paso County and that all proceedings based on the
agreement would be filed in El Paso County. Id. The wife instituted a proceeding to
modify the agreement's child support provisions in El Paso County, but she then moved
to transfer the proceeding to Galveston County, where the children had resided for the prior
six months. Id. The husband contested the motion, arguing that venue was proper in El
Paso County based on the agreement. Id. The trial court refused to transfer the case, and
the wife sought a writ of mandamus. Id. at 440-41. 

 The supreme court cited the mandatory venue rule in suits affecting the parent-child
relationship and determined they applied to the case. Id. at 441. The court cited Fidelity,
holding that the mandatory venue provisions of the family code could not be "negated by
contract." Id. at 441-42. "To hold otherwise would defeat the legislature's intent that
matters affecting the parent-child relationship be heard in the county where the child
resides, and would promote forum shopping by contract." Id. at 442. 


D. The Texas Supreme Court's recent trend toward enforcement of forum
selection agreements is based on the court's rejection of the "ouster"
doctrine.


 Similarly, Texas courts, like most American courts, historically disfavored forum-selection clauses. In re AIU Ins. Co.,148 S.W.3d 109, 111 (Tex. 2004) (orig. proceeding). 
For many years, courts refused to enforce such clauses on the belief that they "ousted" a
court of jurisdiction--relying on the same "ouster" doctrine discussed above. Id. However,
in 1972, the United States Supreme Court issued its decision in The Bremen v. Zapata Off-Shore Co., wherein it held that forum selection clauses are presumptively valid. 407 U.S.
1, 9 (1972). The Bremen Court cited and expressly rejected the "ouster" doctrine
espoused in Morse. Id. In 2004, the Texas Supreme Court followed suit in its decision in
In re AIU Insurance Co., also rejecting the "ouster" doctrine. In re AIU Ins. Co., 148
S.W.3d at 112-15.

 In the years since In re AIU Insurance Co., the Texas Supreme Court has
steadfastly held that forum-selection agreements are generally enforceable. See In re
Autonation, Inc., 228 S.W.3d at 668-70; Michiana Easy Livin' Country, Inc., 168 S.W.3d
at 793; In re Automated Collection Techs., Inc., 156 S.W.3d at 559. There are, however,
exceptions to the general rule. See In re Automated Techs., Inc., 156 S.W.3d at 559;
Michiana Easy Livin' Country, Inc., 168 S.W.3d at 793. Specifically, "enforcement of
forum-selection clauses is mandatory unless the party opposing enforcement 'clearly
shows that enforcement would be unreasonable and unjust, or that the clause was invalid
for such reasons as fraud or overreaching.'" In re Automated Techs., Inc., 156 S.W.3d at
559 (quoting In re AIU Ins. Co., 148 S.W.3d at 112). Additionally, a forum-selection clause
will not be enforced if enforcement would contravene a strong public policy of the forum
where the suit was brought or if the contractually selected forum would be seriously
inconvenient. In re AIU Ins. Co., 148 S.W.3d at 112 (citing The Bremen, 407 U.S. at 15);
see also In re Autonation, Inc., 228 S.W.3d at 670 (O'Neill, J., concurring) (listing all
applicable exceptions to enforcement). 

E. The Texas Supreme Court's recent pronouncements regarding forum-selection clauses do not supplant its decisions regarding venue-selection
agreements.


 Contrary to Great Lakes's arguments, we hold that the supreme court's recent
decisions regarding forum-selection clauses, rejecting the "ouster" doctrine, do not
supplant firmly established Texas law regarding the enforcement of venue-selection
agreements that contravene a mandatory venue statute. First, the Texas Supreme Court
was certainly aware of the holdings in Branum, Leonard, and Fidelity at the time it decided
In re AIU, but it chose not to expressly overrule those cases. Chief Justice Thomas R.
Phillips cited these cases in his dissent in In re AIU and carefully explained that these
cases related to venue. See In re AIU Ins. Co., 148 S.W.3d at 123 (Phillips, J., dissenting)
(citing Int'l Travelers' Ass'n, 212 S.W. at 631 and Fid. Union Life Ins., 477 S.W.2d at 536). 
The majority opinion in AIU did not reference these cases at all. Id. at 109-21.

 Second, although the decision in AIU appears to supplant one of the reasons stated
by the Texas Supreme Court for refusing enforcement of a venue selection
agreement--the "ouster" doctrine--it does not address a separate, critical reason for why
venue selection agreements in contravention of mandatory venue statutes should not be
enforced. In re AIU did not address the legislature's prerogative to set venue or the policy
reasons for refusing to enforce a venue-selection clause in light of those legislative
choices. See id. at 109-21. This legislative prerogative was relied on heavily in the cases
discussed above where the Texas Supreme Court refused to enforce a venue-selection
agreement contrary to a mandatory venue provision. See discussion, supra Part III.B.-C. 
Accordingly, after In re AIU, a highly significant reason to refuse enforcement of venue-selection clauses remains intact.

 Finally, refusing to enforce a venue-selection agreement in contravention of a
mandatory venue statute actually appears to be consistent with the Texas Supreme Court's
recent pronouncements regarding forum-selection agreements and with the legislative
venue scheme. Although forum-selection agreements are presumptively enforceable,
there are exceptions. One of those exceptions occurs when enforcement of the forum-selection agreement contravenes a strong public policy of the forum. In re AIU Ins. Co.,
148 S.W.3d at 112 (citing The Bremen, 407 U.S. at 15); see also In re Autonation, Inc.,
228 S.W.3d at 670 (O'Neill, J., concurring). 

 In In re Autonation, the supreme court's most recent pronouncement on forum-selection clauses, the court faced an argument that enforcement of a forum-selection
clause in a covenant not to compete, selecting an out-of-state forum for a suit against a
Texas resident, would violate Texas public policy. In re Autonation, Inc., 228 S.W.3d at
668. The court rejected the argument. Id. at 668-69. The primary reason for its decision
was that neither Texas courts nor the Texas Legislature had ever declared a fundamental
Texas policy requiring every employment dispute with a Texas resident be litigated in
Texas: "We recognized in AIU that even where Texas statutory provisions specify the
application of Texas law, these provisions are irrelevant to the enforceability of a forum-selection clause where no statute 'requires suit to be brought or maintained in Texas.'" Id.
at 669. In the absence of any recognized public policy, either through a judicial opinion or
through a statute, the court would enforce the forum-selection agreement. Id. 


 In contrast to Autonation, the Texas legislature has enacted statutes that govern
venue for suits brought in Texas State courts, expressing a legislative policy as to where
a particular suit may be brought. Tex. Civ. Prac. & Rem. Code Ann. Ch. 15 (Vernon 2002
& Supp. 2006). The legislature has provided that in very limited circumstances, a party
may contract around a mandatory venue statute. Id. Parties to a "major transaction,"
which must be evidenced by a written agreement and involve consideration with an
aggregate stated value of at least one million dollars, may provide for venue in the contract. 
Id. § 15.020. In contrast, in other transactions of any amount where the contract provides
that an obligation is to be performed in a particular county, the legislature has provided
venue is permissive in that county. Id. § 15.035. Given these specific instructions from the
legislature, we must assume that the legislature intended that any other type of venue-selection agreement would be unenforceable. Cameron v. Terrell & Garret, Inc., 618
S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must also be
presumed to have been excluded for a purpose. Only when it is necessary to give effect
to the clear legislative intent can we insert additional words or requirements into a statutory
provision."); Wood v. Victoria Bank & Trust Co., N.A., 170 S.W.3d 885, 890 (Tex.
App.-Corpus Christi 2005, pet. denied). We cannot discern any clear legislative intent that
would allow us to essentially add an exception to mandatory venue into chapter 15 of the
civil practice and remedies code, and we decline to do so. Cameron, 618 S.W.2d at 540;
Wood, 170 S.W.3d at 890.

 Accordingly, we believe that the theoretical underpinnings for In re AIU and its
progeny do not apply to venue-selection agreements, and the supreme court did not intend
to supplant nearly a hundred years of Texas case law (11) or the legislative policies expressed
in chapter 15 of the civil practice and remedies code. We implicitly recognized as much
when, in 2006, we refused to enforce a venue-selection agreement that contravened a
mandatory venue provision. See Fleming v. Ahumada, 193 S.W.3d 704, 712-13 (Tex.
App.-Corpus Christi 2006, no pet.); see also Liu, 2007 Tex. App. LEXIS 81, at *6-7
(distinguishing between "forum" and "venue" and holding that venue-selection agreements
are unenforceable). Although Fleming did not address the law regarding forum-selection
agreements, it was properly decided, and we decline to overrule it. The trial court,
therefore, did not abuse its discretion when it refused to enforce the venue-selection
agreement between Ramos and Great Lakes. 

IV. Conclusion

 Texas law prohibits parties from contracting away mandatory venue. The trial court
properly refused to enforce such an agreement in this case. Because Great Lakes was
required to show an abuse of discretion for which an appeal is inadequate, and we find no
abuse of discretion, we must deny Great Lakes's petition for writ of mandamus. Walker, 
827 S.W.2d at 837 (denying mandamus relief for failure to establish abuse of discretion);
In re Hamrick, 979 S.W.2d 851, 853 (Tex. App.--Houston [14th Dist.] 1998, orig.
proceeding). 

 __________________________

 GINA M. BENAVIDES

 Justice

Opinion delivered and filed this

the10th day of January, 2008.


1. Presiding judge of the 92nd District Court of Hidalgo County, Texas.
2. Ramos signed a Spanish translation of this document. Ramos does not dispute that the language
quoted by Great Lakes in its petition is a true and accurate translation of the document Ramos signed. 
Accordingly, we will recite the relevant portions in English.
3. The Jones Act was recodified in 2006. See Pub. L. No. 109-304, § 6(c), 120 Stat. 1510 (2006).
4. Great Lakes also filed a Complaint for Declaratory Judgment in the United States District Court for
the Southern District of Texas, Houston Division, seeking a declaration of its rights under the "forum" selection
agreement. Ramos responded by filing a Motion to Abate and Response to Complaint for Declaratory
Judgment. On September 24, 2007, the United States District Court denied Ramos's motion to abate, but
it has not yet finally determined Great Lakes's request for declaratory relief. See Great Lakes Dredge & Dock
Co. v. Ramos, No. H-07-0630, 2007 U.S. Dist. LEXIS 70493, at *1-4 (S.D. Tex. Sept. 24, 2007). Great Lakes
has not argued, nor do we find, that the pending declaratory judgment action filed after the state court
proceedings below in any way precludes this Court from determining the issues in this original proceeding. 


 Additionally, Great Lakes points us to a case pending in the Southern District of Texas that involves
similar issues to those involved in the instant case. See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu,
et al., Nos. H-06-3489, H-06-3669, H-06-4040, pending in the Federal District Court for the Southern District
of Texas. There, Great Lakes filed a declaratory judgment action seeking an injunction and a declaration that
the seaman-plaintiffs, in three state court actions similar to Ramos's state court action, cannot proceed
against Great Lakes anywhere other than in the Harris County District Courts or the Southern District of Texas
pursuant to the same "forum" selection clause at issue here. The federal district court held that it was
precluded by the federal Anti-injunction Act from issuing an injunction or any declaratory judgment that would,
in effect, preclude the state courts from proceeding. See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu,
Nos. H-06-3489, H-06-3669, H-06-4040, 2007 U.S. Dist. LEXIS 59726, at *10-22 (S.D. Tex. Aug. 15, 2007)
(citing 28 U.S.C. § 2283). The federal district court nevertheless held that it had authority to issue a
declaration that the "forum" selection clauses are enforceable and that the seaman-plaintiffs breached their
agreements by filing suit in Hidalgo County, denying the seaman-plaintiffs' motion to dismiss under various
abstention doctrines. Id. at *22-45.

 

 The court addressed the seaman-plaintiffs' arguments that the "forum" selection agreements are
unenforceable as against public policy in Jones Act cases. Id. at *45. With regard to the agreement's validity
under Texas law, the district court noted that the Texas Legislature recently enacted a mandatory venue
provision applicable to Jones Act cases, citing section 15.0181 of the civil practice and remedies code, but
it held that this provision did not apply to the Larrisquitu plaintiffs' cases because they were filed before its
effective date. Id. at *67. The district court did not discuss the statutory predecessor to 15.0181 or its
applicability. Id. It then stated "[n]or is it clear that this venue provision would trump Texas's policy of
presuming forum-selection clauses valid. The forum-selection agreements in the present cases are not invalid
under Texas law." Id. The trial court then stated that, based on the applicable statutory authority and the
record which was only developed through the seaman-plaintiffs' motion to dismiss, it was refusing to conclude
that the forum-selection agreements were unenforceable, and it denied the motion to dismiss. Id. at 69. 


 The Larrisquitu court did not address the applicability of the prior, and applicable, version of the
mandatory venue statute in Texas or the distinction between forum-selection clauses and venue-selection
clauses, as we conclude we must. In fact, the district court expressly recognized our authority to make our
own determination of the issues in this case and in the Larrisquitu state court cases, if they come before us. 
See id. ("The state courts are competent to determine the enforceability of the parties' forum-selection
agreements."). The federal district court has not issued a declaratory judgment in either the Ramos or the
Larrisquitu case. Finding no bar to our consideration of the issues, we proceed to make our own
determination. 

 
5. Acts of 1995, 74th Leg., R.S., ch. 138, § 2, 1995 Tex. Gen. Laws 138 (codified at former Tex. Civ.
Prac. & Rem. Code Ann. § 15.018 (2002), amended by Acts of 2007, 80th Leg., R.S., ch. 203, § 2, 2007 Tex.
Gen. Laws 203 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 15.0181 (effective May 24, 2007)). 
The former statute provided:


 All suits brought under . . . the Jones Act shall be brought: (1) in the county in which all or
a substantial part of the events or omissions giving rise to the claim occurred; (2) in the
county where the defendant's principal office in this state is located; or (3) in the county
where the plaintiff resided at the time the cause of action accrued. 


Id. It is undisputed that (1) Ramos's injury occurred in Florida, (2) that Great Lakes's principal place of
business is in Oak Brook, Illinois; and (3) that Ramos resides in Hidalgo County. Although Great Lakes
asserts in its reply brief in a footnote that its principal office in Texas is located in Harris County, Texas, Great
Lakes does not cite any authority in the record for this proposition that was presented to the trial court. Thus,
on the record before the court, Harris County is not a choice under the mandatory venue provision in effect
at the time Ramos filed suit, which is applicable to this case. Acts of 2007, 80th Leg., R.S., ch. 203, § 3, 2007
Tex. Gen. Laws 203 (codified at Tex. Civ. Prac. & Rem. Code Ann. § 15.0181 (effective May 24, 2007) ("The
change in law made by this Act applies only to an action commenced on or after the effective date of this Act.
An action commenced before the effective date of this Act is governed by the law in effect immediately before
the effective date of this Act, and that law is continued in effect for that purpose."). Nevertheless, the
mandatory venue statute expressly gave Ramos the option to choose venue from the three alternatives. 
Under the following discussion, taking away that choice by way of a venue agreement is inconsistent with the
mandatory venue scheme and equally as unenforceable. 
6. 654 S.W.2d 440, 441-42 (Tex. 1983) (orig. proceeding). 
7. 477 S.W.2d 535, 537 (Tex. 1972).
8. See, e.g., Reliant Energy, Inc. v. Gonzalez, 102 S.W.3d 868, 875 (Tex. App.-Houston [1st Dist.]
2003), aff'd, Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615 (Tex. 2005).
9. 28 U.S.C. § 1333(1); Stier v. Reading & Bates Corp., 992 S.W.2d 423, 429 (Tex. 1999).
10. A "plea of privilege" is the term previously used to refer to the procedural mechanism for transferring
venue. See McDonald & Carlson, Texas Civil Practice, § 6.1 (2006).
11. Many cases prior to In re AIU followed Branum, Leonard, and Fidelity. See, e.g., In re Calderon,
96 S.W.3d 711, 716-17 (Tex. App.-Tyler 2003, orig. proceeding); Bristol-Myers Squibb Co. v. Goldston, 957
S.W.2d 671, 674 (Tex. App.-Fort Worth 1997, no writ); Docta, Inc. v. Mediserve, Inc., 607 S.W.2d 301, 302
(Tex. Civ. App.-Waco 1980, no writ); McGinn v. Fid. Union Life Ins. Co., 474 S.W.2d 320, 320-21 (Tex. Civ.
App.-Texarkana 1971, writ ref'd n.r.e.); Tilley v. Capital Nat'l Bank, 367 S.W.2d 359, 361-62 (Tex. Civ.
App.-Austin 1962, no writ); Bexar County Mut. Ins. Co. v. Ward, 245 S.W.2d 325, 326 (Tex. Civ.
App.-Eastland 1952, no writ); Gen. Motors Acceptance Corp. v. Hunsaker, 50 S.W.2d 367, 367-68 (Tex. Civ.
App.-Amarillo 1932, writ dism'd); Pfeifer v. E.J. Hermann Sales Co., 43 S.W.2d 484, 485-86 (Tex. Civ.
App.-San Antonio 1931, no writ). If the supreme court had intended to supplant this vast authority, it would
have done so expressly.