# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0732

════════════

IN RE STEPHANIE LEE, RELATOR

════════════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

════════════════════════════════════════════

JUSTICE GUZMAN, concurring.

In this mandamus proceeding, the Court must construe section 153.0071 of the Texas Family Code to determine whether the trial court abused its discretion by refusing to enter judgment on a properly executed mediated settlement agreement (MSA) and instead setting the matter for trial. Despite discord on other issues, the opinions make several matters apparent. First, the Court holds that section 153.0071 of the Family Code prohibits a trial court from conducting a broad best-interest inquiry at a hearing for the purpose of entering judgment on a properly executed MSA.[1] Second, a different majority of the Court would hold that a trial court does not abuse its discretion by refusing to enter judgment on an MSA that could endanger the safety and welfare of a child—an issue on

---

[1] JUSTICE JOHNSON, JUSTICE WILLETT, myself, JUSTICE LEHRMANN, and JUSTICE BOYD conclude that section 153.0071 precludes a broad best-interest inquiry on a properly executed MSA. __ S.W.3d __, __. Parts IV and VI of JUSTICE LEHRMANN's opinion are a plurality, but for ease of reference, this writing will refer to that opinion and the Justices who join it as the Court.

which the remaining four justices express no opinion.[2] Third, no Justice disputes that trial courts possess a number of mechanisms to protect children from endangerment, such as issuing temporary orders and contacting the Texas Department of Family and Protective Services. Finally, a majority of the Court agrees that if there is evidence of endangerment, an additional mechanism the trial court possesses to protect the child is to refuse to enter judgment on the MSA.

I write separately because although I agree with Court that section 153.0071 precludes a broad best-interest inquiry, I also believe that it does not preclude an endangerment inquiry. The Court fails to address the endangerment inquiry, but I believe the issue is critical because the facts of this case potentially implicate the inquiry—discussion of which provides much-needed guidance to trial courts. I agree with the Court that mandamus is appropriate because there is legally insufficient evidence of endangerment to support the trial court's decisions to set aside the MSA and place the matter on its trial docket. The trial court sustained a hearsay objection to the only statement at the hearing that could have demonstrated the mother might not comply with the MSA (a statement from the father that the mother informed him after signing the MSA that she did not have to inform him of her and her husband's whereabouts). Thus, this record is sparse and does not establish the threshold I believe must be met before a trial court may disregard legislative policy concerning the deference to which MSAs are entitled. Accordingly, I believe the trial court abused its discretion and therefore join the Court's decision to conditionally grant mandamus relief as well as all but Parts

---

[2] CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE GREEN, myself, and JUSTICE DEVINE believe that section 153.0071 does not preclude an endangerment inquiry. __ S.W.3d __, __ & n.1 (Green, J., dissenting); *infra* Part II. Though the Court expressly avoids the issue, __ S.W.3d at __, the dissent observes that the Court's decision to not require the trial court here to enter judgment on the MSA must mean the Court recognizes that a trial court may refuse to enter judgment on an MSA that could endanger a child's safety and welfare. __ S.W.3d at __ (Green, J., dissenting).

IV and VI of the Court's opinion. If on remand the trial court considers evidence and finds that entry of judgment on the MSA could endanger the child, I am certain the trial court will take appropriate action.

## I. Background

The parties in this case entered into a settlement agreement after a lengthy mediation in which they were both represented by counsel. The MSA was memorialized in accordance with section 153.0071(d) of the Family Code, which requires trial courts to enter judgment on a properly executed MSA notwithstanding any other rule of law (unless the MSA was procured due to family violence). TEX. FAM. CODE §§ 153.0071(d)–(e-1). But, as often happens in family law cases, the agreement began to unravel after the parties left the mediation. In fact, this particular agreement began to fall apart during the "prove-up" in front of an associate judge.[3]

The matter was subsequently presented to the district court judge, who conducted a *de novo* hearing and expressly indicated she did not have the record from the hearing before the associate judge.[4] The trial court heard limited evidence and argument from the child's mother, Stephanie Lee, and father, Benjamin Redus. Although Redus had alleged before the associate judge that Stephanie allowed her husband—a convicted sex offender—to sleep naked with Redus's daughter in the bed,

---

[3] Associate judges in family law cases are appointed pursuant to Chapter 201 of the Family Code.

[4] The trial court acknowledged "there is no written report" from the hearing before the associate judge "save and except what's on this docket sheet" and accordingly conducted a *de novo* hearing. Under section 201.015(a) of the Family Code, "[a] party may request a de novo hearing before the referring court . . . ." TEX. FAM. CODE § 201.015(a). In addition, the referring court "*may* also consider the record from the hearing before the associate judge." *Id*. § 201.015(c) (emphasis added).

3

tellingly, he did not repeat this allegation to the trial court. And importantly, this record does not establish that the trial court considered Redus's prior testimony.

In refusing to enter judgment on the MSA, the trial court held, without further explanation, that the MSA was "not in the best interest of the child[]." In addition to entering an order refusing to enter judgment on the MSA, the trial court set the entire matter for trial.

## II. Discussion

The question in this mandamus proceeding is whether the trial court's orders denying the MSA and setting the matter for trial constitute an abuse of discretion. Mandamus relief will lie if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy. *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). Regarding factual issues, a trial court abuses its discretion if it reasonably could only have reached one decision. *Id.* at 840; *see GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding) (granting mandamus relief when no evidence supported trial court determination). But a trial court has no discretion in determining what the law is or in applying the law to the facts, even when an area of the law is unsettled. *Walker*, 827 S.W.2d at 840; *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding).

Here, Stephanie argues that the court's refusing to enter judgment on the MSA and setting the matter for trial were abuses of discretion because section 153.0071 of the Family Code forecloses

4

a broad best-interest inquiry. Redus contends that the trial court's actions were proper because the Family Code always allows a trial court to examine the best interests of the child.

Our courts of appeals have wrestled with precisely what inquiry, if any, section 153.0071 allows.[5] I agree with the Court that section 153.0071 in fact forecloses a broad best-interest inquiry. In doing so, the statute furthers the time-honored "presumption that fit parents act in the best interests of their children"[6] and comports with the public policy and purpose of mediation by letting the parties settle their affairs "as they see fit"—keeping those matters out of the courtroom.[7]

But I disagree that this principle alone resolves this proceeding. I agree with the dissent to the extent it believes that a contextual reading of the Family Code allows a narrow inquiry into whether entering judgment on an MSA could endanger the safety and welfare of a child.[8] *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("We must read the statute as a whole and not just isolated portions."). The dissent convincingly argues that requiring the trial court to enter a judgment that could endanger the child would be an absurd result. __ S.W.3d __, __ (Green, J., dissenting). It is, in my view, not only absurd but also plainly nonsensical

---

[5] *See, e.g.*, *Philipp v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00418-CV, 2012 WL 1149291, at *10 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.) ("although a trial court may do so if presented with proper facts, nothing in section 153.0071 requires best-interest hearings in every case involving a mediated settlement agreement"); *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *5 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.) (holding that section 153.0071 does not allow a trial court to refuse to enter judgment on an MSA when one party believes the agreement is different than what the plain language of the MSA reflects); *Beyers v. Roberts*, 199 S.W.3d 354, 359 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("Nothing in [section 153.0071] requires that a trial court conduct a best interest hearing before entering an order pursuant to a mediated settlement agreement.").

[6] *Troxel v. Granville*, 530 U.S. 57, 68 (2000).

[7] *Barina*, 2008 WL 4951224, at *4.

[8] Emotional and physical danger to the child is one of the nine factors in determining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

5

and against public policy to read section 153.0071 to require a trial court to enter judgment on an MSA when presented with evidence that doing so could endanger the child.[9] *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).  In holding that the statute forecloses the broad best-interest inquiry, the Court does not expressly state whether the Family Code allows a narrow endangerment inquiry.[10]  But allowing the inquiry places the statute in accord with the Family Code's many mechanisms to protect the safety and welfare of children[11] and preserves the right of the State, as *parens patriae*, to intervene when parents' decisions could endanger the safety and welfare of their children.[12]

Here, however, even assuming the trial court's inquiry was a narrow inquiry into whether entering judgment on the MSA could endanger the child, the dissent and I diverge as to whether there was legally sufficient evidence of endangerment.

_____

[9] The contractual defense of illegality may also allow a trial court to refuse to enter judgment on an MSA that could endanger the safety and welfare of a child.  It is illegal to contract to harm a child.  Further, it is well established that courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy. *Woolsey v. Panhandle Ref. Co.*, 116 S.W.2d 675, 678 (Tex. 1938).  Though we have yet to decide the issue, our courts of appeals have observed that MSAs are contracts and courts may not enforce them if they are illegal. *See, e.g.*, *Garcia-Udall v. Udall*, 141 S.W.3d 323, 331–32 (Tex. App.—Dallas 2004, no pet.) ("A trial court has authority not to enforce illegal provisions in mediated settlement agreements.").  Thus, an MSA containing provisions that would result in abuse is void. *See, e.g.*, *United States v. King*, 840 F.2d 1276, 1283 (6th Cir. 1988) ("[A] parent's contract allowing a third person to burn, assault, or torture his child is void.").

[10] As the dissent observes, the Court's decision to not mandamus the trial court to enter judgment on the MSA must mean the Court believes "that the Family Code allows a trial court discretion to refuse to sign a judgment pursuant to an MSA that places a child's safety and welfare in danger."  __ S.W.3d at __ (Green, J., dissenting).

[11] __ S.W.3d at __ (discussing temporary orders, temporary restraining orders, temporary injunctions, protective orders, motions to modify, habeas corpus proceedings, continuing the MSA hearing, and contacting the Texas Department of Family and Protective Services as options under the Family Code to protect the safety and welfare of the child).

[12] *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 766 (1982) (recognizing the state retains "a *parens patriae* interest in preserving and promoting the welfare of the child"); *Miller v. HCA, Inc.*, 118 S.W.3d 758, 766 (Tex. 2003) ("The State's role as *parens patriae* permits it to intercede in parental decision-making under certain circumstances.").

### III. Application

Applying the above framework, it was an abuse of discretion for the trial court to refuse the MSA and set the matter for trial because no legally sufficient evidence of endangerment was admitted at the *de novo* hearing. Initially, it is important to note the MSA contains an injunction requiring Scott Lee, a registered sex offender, to not be within five miles of the daughter when Stephanie has possession of her and to inform Redus through Stephanie of Scott's whereabouts during Stephanie's possession. As the Court properly observes, "[c]ompliance with the MSA, then, means the child will have no contact with Scott." __ S.W.3d __, __. Thus, entering judgment on the MSA could only endanger the daughter if Stephanie violated the MSA by allowing Scott to violate the injunction.

There was no legally sufficient evidence admitted at the hearing before the trial court that Stephanie would violate the MSA by allowing Scott to violate the injunction. Redus testified at the hearing that approximately one week after signing the MSA, Stephanie informed him that "I don't have to tell you everywhere we go." But the trial court sustained opposing counsel's hearsay objection to the statement. Redus did not challenge that ruling on appeal, and neither side asked Stephanie if she intended to comply with the MSA. Because on its face the MSA does not endanger the child, and the trial court heard no legally sufficient evidence that entering judgment on the MSA could endanger the child because Stephanie would violate the MSA, mandamus relief is warranted for this particular situation. *See Walker*, 827 S.W.2d at 840.[13]

---

[13] In deciding to refuse the MSA and set the matter for trial, the trial court also disregarded portions of the MSA wholly unrelated to any allegations of endangerment, such as provisions setting child support amounts, determining which parent would cover the child's health insurance, and which parent would claim the child as a dependent for federal

The dissent mischaracterizes the record in an attempt to buttress its conclusion that the trial court did not abuse its discretion. Specifically, the dissent concludes that "[n]ot only did this mother admit on the record that she allowed her daughter to have unsupervised visitation with a registered sex offender, but her testimony informed the trial court that she had helped her husband to violate the terms of an existing court order by allowing such contact." __ S.W.3d at __ (Green, J., dissenting). The law and the record, however, belie this bold assertion. As to the law, courts must presume parties will comply with their orders, just as we presume that fit parents act in the best interest of their children (including when entering into MSAs).[14] Section 153.0071 enforces these presumptions unless there is rebutting evidence that entering judgment on the MSA could endanger the safety and welfare of the child. As to the record, Stephanie never testified whether she would comply with the MSA. The dissent relies upon testimony by Stephanie that it believes indicates she knew Scott had violated his probation. __ S.W.3d at __ & n.2 (Green, J., dissenting). But this is not evidence that Stephanie would violate the potential court order at issue. Importantly, unlike the probation order—which would not subject Stephanie to punishment for violations—a judgment on this MSA would bind Stephanie to comply and subject her to contempt of court, including potential incarceration, for a violation. And notably, even this testimony itself is not as unequivocal as the dissent suggests. When specifically asked about Scott's probation violation, Stephanie stated that it "was that he was—I had unsupervised visitation contact with my daughter," an ambiguous statement at best. Later, upon direct inquiry as to whether she allowed unsupervised visits to occur,

___

income tax purposes.

[14] *See Troxel*, 530 U.S. at 68 ("there is a presumption that fit parents act in the best interests of their children").

Stephanie responded "[n]o, she has not." Though the hearing involved no further inquiry as to this issue, the dissent interprets this testimony to mean unsupervised contact did occur between Stephanie's husband and her daughter—which is still irrelevant to the MSA. __ S.W.3d at __ & n.2 (Green, J., dissenting).

Finally, it is not uncommon for family courts to find themselves at a crossroads between divining the legislature's intent on a particular statute and making expedient decisions regarding the safety and welfare of the children entrusted to their judgment. Often, they must interpret statutory language without the benefit of guidance from the court of last resort. This difficulty is greatly heightened by the significant effect family law decisions have on the daily lives of parties. I have no doubt that the experienced trial judge in this case—now having the benefit of this Court's interpretation—will protect the safety and welfare of the child within the parameters established by the Family Code and consistent with legislative policy choices embodied in section 153.0071.

## IV. Conclusion

In sum, I believe section 153.0071 of the Family Code precludes a broad best-interest inquiry. A trial court may, however, when presented with evidence that entering judgment on an MSA could endanger the safety and welfare of a child, refuse to enter judgment on the MSA. But because the record before us today reveals no legally sufficient evidence that entering judgment on the MSA could endanger the safety and welfare of the child, I join all but Parts IV and VI of the Court's opinion, as well as its decision that conditional mandamus relief is warranted. *See Walker*, 827 S.W.2d at 840.

9

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** September 27, 2013