**Denied and Opinion Filed March 1, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01028-CV

### IN RE FREIGHTQUOTE.COM, Relator

**Original Proceeding from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-01862-D**

# MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Carlyle
Opinion by Justice Myers

In this original proceeding, relator Freightquote.com ("Freightquote") complains of an order denying its motion to dismiss based on a forum-selection clause. At issue is whether a bill of lading incorporated a forum-selection clause Freightquote maintains is available on Freightquote's website and was included in the initial enrollment agreement between Freightquote and real party in interest Amcad Enterprises ("Amcad"). Freightquote seeks a writ of mandamus directing the trial court to vacate the order denying the motion to dismiss and to dismiss Amcad's claims. Under this record, we conclude Freightquote has not established a clear abuse of discretion and deny the petition for writ of mandamus.

## Background

Freightquote is an online freight service provider and a licensed transportation property broker that works with a network of carriers to negotiate rates for shippers. Freightquote's headquarters is located in Kansas City, Missouri. Amcad is a graphics distribution company with

its principal place of business in Carrollton, Texas. Amcad enrolled online as a Freightquote customer on May 27, 2014. Amcad received an e-mail from Freightquote customer service confirming the creation of Amcad's account. A hyperlink to Freightquote's terms and conditions was listed at the bottom of the confirmation e-mail below Freightquote's contact information. The enrollment e-mail received by Amcad did not, however, include a statement directing Amcad to view the terms and conditions or stating that Amcad agreed to the terms and conditions.

Amcad utilized Freightquote's brokerage services for 134 shipments between Amcad's initial enrollment in 2014 and the December 23, 2016 shipment at issue in this case. Amcad booked six of the 134 shipments "externally" through Freightquote's website. Amcad booked the other 128 orders "internally" by calling Freightquote and speaking with a sales representative.

Following each phone call or website order, Amcad received a confirmation e-mail acknowledging the shipment. Each confirmation e-mail included a blue hyperlink to Freightquote's terms and conditions. Like the enrollment e-mail, the hyperlink was located under Freightquote's contact information and did not instruct Amcad to view or agree to the terms and conditions. When booking externally through the website, however, Amcad could not complete the order without checking the box next to the text "[t]he customer has read and agreed to the terms & conditions" and then selecting "book this shipment." In contrast, internal orders placed on the telephone did not require Amcad's agreement to Freightquote's terms and conditions before booking.

The order at issue here was for the shipment of a 12-foot Laminator Table and Flatbed Applicator (CWT Table) to an Amcad client in Mexico. On December 23, 2016, Amcad scheduled the shipment internally through a telephone order with Freightquote. After placing the order, Amcad received two e-mails from Freightquote. The first confirmed the order, provided the shipment number, stated that Freightquote would contact the carrier and schedule the shipment,

and included the blue hyperlink to Freightquote's terms and conditions. The second automated e-mail attached a bill of lading for the shipment and stated that RGV Logistics Carriers LLC had been assigned to move the load. The bill of lading included the following at the bottom of the page (redacted):

The bill of lading designated Amcad as "Shipper," RGV Logistics as "Carrier," and Amcad's customer as "Consignee." The terms "Customer" and "Organization" were undefined.

When the CWT Table did not arrive as scheduled, Amcad investigated and discovered that the shipment was not delivered because it had been off-loaded and abandoned outside of a trailer repair shop. Amcad sued Freightquote and RGV Logistics after Amcad's attempts to resolve the matter with Freightquote failed. Freightquote moved to dismiss the underlying proceeding based on a forum-selection clause available on Freightquote's website. The forum-selection clause designated specific Missouri courts as the chosen forum for certain disputes:

> 5. Forum Selection and Choice of Law
>
> Any claim, dispute or litigation relating to these TERMS AND CONDITIONS, any shipment scheduled or tendered hereunder or through the Company's website, or relating to any and all disputes between the Company and the enrolled Customer, Shipper and/or Consignee and/or Brokers for any enrolled Customer, Shipper and/or Consignee, shall be filed in the Circuit Court of Jackson County, Missouri or in the United States District Court for the Western District of Missouri, Western Division and shall be subject to Missouri law. Customer hereby irrevocably consents and submits themselves to the personal jurisdiction of said courts for all such purposes.

Freightquote maintains that Amcad agreed to the forum-selection and choice-of-law provision by accepting Freightquote's terms and conditions when it placed the six orders booked

online, and by signing prior bills of lading that included the language above the signature lines that "Customer agrees to the organization's terms and conditions, which can be found at www.freightpaycenter.com." Freightquote also argues that the general placement of hyperlinks to the terms and conditions in its confirmation e-mails to Amcad establish a course of dealing showing Amcad's agreement to Freightquote's terms and conditions. Freightquote asserts that the trial court should have granted its motion to dismiss because of Amcad's alleged agreement to the terms and conditions and, therefore, the forum-selection clause.

Amcad maintains, however, that the forum-selection clause was not part of the agreement for this shipment because the bill of lading did not specifically show an intent to incorporate the terms and conditions by reference. Amcad asserts that the language above the signature lines did not reference or incorporate Freightquote's terms and conditions and did not state that Amcad, the shipper, agreed to the terms and conditions. Rather, Amcad argues that the statement above the Shipper's signature line references "the Organization's" terms and conditions and directs the "Customer" to a website that is not Freightquote.com. Neither "Organization" nor "Customer" are defined in the bill of lading, and Amcad is designated as the "Shipper." As such, Amcad maintains that the bill of lading is ambiguous as to whose terms and conditions are referenced and what entity agreed to those terms and conditions.

The trial court denied Freightquote's motion to dismiss, and this original proceeding followed. Amcad filed a response to Freightquote's petition at our request, and Freightquote filed a reply. After reviewing the briefs and the record, we conclude Freightquote is not entitled to mandamus relief.

## Standard of Review

Mandamus relief is available to enforce forum-selection agreements because there is no adequate remedy by appeal when a trial court abuses its discretion by refusing to enforce a valid

forum-selection clause that covers the dispute. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009). When the standard of review is abuse of discretion, "[c]lose calls go to the trial court." *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.—Dallas 2007, pet. denied).

We review the trial court's decision whether to enforce a forum-selection clause for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo. *In re Int'l Profit Assocs.*, 274 S.W.3d at 675; *see In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). As there were no findings of fact or conclusions of law here, we infer that the trial court made all fact findings that have support in the record and are necessary to uphold the ruling. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

## Applicable Law

Forum-selection clauses provide parties with an opportunity to contractually preselect the jurisdiction for dispute resolution. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017) (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex. 2004) (orig. proceeding)). Forum-selection clauses are generally enforceable, and a party attempting to show that such a clause should not be enforced bears a heavy burden. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (per curiam) (citing *In re AIU Ins. Co.*, 148 S.W.3d at 113). Failing to give effect to contractual forum-selection clauses and forcing a party to litigate in a forum other than the contractually chosen one amounts to "clear harassment" that injects "inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics . . ." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding) (quoting *In re AutoNation, Inc.*, 228 S.W.3d 663, 667–68 (Tex. 2007) (orig. proceeding)).

When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (citing *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Unsigned documents may be incorporated into the parties' contract by referring in the signed document to the unsigned document. *Id.* (citing *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968)). The language used to refer to the incorporated document is not important as long as the signed document "plainly refers" to the incorporated document. *Id.* (quoting *Owen*, 433 S.W.2d at 167); *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi-Edinburg 2003, orig. proceeding). Documents incorporated into a contract by reference become part of that contract. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam). When a document is incorporated into another by reference, both instruments must be read and construed together. *In re C & H News Co.*, 133 S.W.3d at 645–46. "Plainly referring to a document requires more than merely mentioning the document." *Dent Zone Cos.*, 409 S.W.3d at 189. "The language in the signed document must show the parties intended for the other document to become part of the agreement." *Id.*

## Discussion

Amcad maintains that the forum-selection clause was not part of the contract for the December 23, 2016 shipment because the bill of lading did not specifically show an intent to incorporate Freightquote's terms and conditions by reference, and the evidence did not show a course of dealing under which Amcad could be found to have agreed to the forum-selection clause for purposes of that shipment.

We find this Court's opinion in *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies* instructive. In *Dent Zone*, this Court considered whether an application to become a certified

repair center for Dent Zone incorporated by reference terms and conditions found on Dent Zone's website such that the applicant, Bob Montgomery Chevrolet, was bound by those terms and conditions, including a forum-selection clause. 409 S.W.3d at 184–85. The signed application stated Bob Montgomery Chevrolet would "become a 'Certified Repair Center' as detailed in our PDR LINX Service Program," and would "be an independent contractor working within the PDR LINX Service Program." *Id.* at 190. The application also stated, "Additional benefits, qualifications and details of the PDR LINX Service Program are available for your review at our website: http://www.linxmanager.com/pdf/CRCTermsConditions.pdf." *Id.* at 190. The website consisted of a two-page document (the internet document) listing terms and conditions for the PDR Linx Service Program agreement, including what Dent Zone asserted was a minimum six-month contractual term, a choice-of-law provision making Texas law applicable to the agreement, and a forum-selection clause stating that any suit between the parties would be heard in Dallas County, Texas. *Id.* at 185. Dent Zone maintained that the above-quoted sentence incorporated the internet document by reference and, as such, bound Bob Montgomery Chevrolet to those terms and conditions, including the forum-selection clause. *Id.* at 188–89. Bob Montgomery Chevrolet asserted the internet document was not part of the contract. *Id.*

This Court agreed with the dealership, concluding the terms and conditions were not part of the contract because the referring language did not meet the standards for incorporation by reference:

> The language, "Additional benefits, qualifications and details of the PDR LINX Service program are available for your review at our website: http://www.linx manager.com/pdf/CRCTermsConditions.pdf" does not state the internet document is incorporated by reference into the parties' agreement, does not plainly refer to additional terms and conditions in the internet document as becoming part of the parties' agreement, and does not otherwise suggest that the parties intended for the internet document to become part of their agreement. Instead, this language indicates that the internet document contained informative material only, not binding terms and conditions intended to be part of the parties' contract.

–7–

*Id.* at 190. Although the referring language in *Dent Zone* is not identical to the language in the bill of lading at issue here, we find *Dent Zone* persuasive.

Like the agreement in *Dent Zone*, the four corners of the bill of lading do not include a forum-selection clause, and the statement on the bill of lading regarding terms and conditions on the website does not state that any forum-selection clause, let alone Freightquote's purported terms and conditions, are incorporated by reference into the agreement for the December 23 shipment. The language in the bill of lading does not specifically define who the Customer and Organization are and, as such, the bill of lading does not show an agreement by Amcad to the referenced terms and conditions. Furthermore, the language cites to a website, www.freightpaycenter.com, that does not plainly refer to Freightquote or its website. Although much of the dissent's argument is premised on the view that Freightquote's terms and conditions were available at www.freightpaycenter.com, we have found no uncontroverted evidence in this record that the terms and conditions were actually available there. Freightquote included its terms and conditions as Exhibit F to its motion to dismiss, but the exhibit does not reference any website or show the origin of the printed exhibit. The only reference to a ".com" is in the company's name in the first sentence of the exhibit—"Freightquote.com, Inc." Exhibit F was proven up by the affidavit of George Meier, but his affidavit does not state that the terms and conditions were available at www.freightpaycenter.com. Rather, he simply states what "Section 5 of the Terms and Conditions" provides. Meier also misstated in his affidavit what the bill of lading said regarding the terms and conditions. In paragraph 14, Meier stated that:

> 14. AMCAD signed the bill of lading, a copy of which is attached hereto as **Exhibit E.** Directly above AMCAD's signature, the bill of lading recites in capital letters that AMCAD agrees to Freightquote's Terms & Conditions found at "WWW.FREIGHTPAYCENTER.COM."

But the bill of lading's actual language was:

> CUSTOMER AGREES TO THE ORGANIZATION'S TERMS AND CONDITIONS, WHICH CAN BE FOUND AT WWW.FREIGHTPAYCENTER.COM.

–8–

And as we have noted before, the terms "Customer" and "Organization" are undefined. The record does not support a determination that Freightquote's terms and conditions were incorporated by reference in the bill of lading or that Amcad agreed to Freightquote's terms and conditions for this shipment. Indeed, the mandamus record includes no evidence that Amcad was required to agree to Freightquote's terms and conditions when it enrolled as a customer or when it booked the shipment at issue.

We conclude the referring language is ambiguous as to who agreed to which Organization's terms and conditions and does not unambiguously incorporate by reference Freightquote's terms and conditions. Freightquote cites no binding authority or uncontroverted evidence that would require the trial court to find that the forum-selection clause was incorporated into the contract here, either by reference or course of dealing. Authorities cited by Amcad, the record evidence, and the bill of lading itself, however, support Amcad's contention that the forum-selection clause was not part of this contract.

Under this record, we conclude Freightquote has not established that the trial court clearly abused its discretion by denying Freightquote's motion to dismiss. Accordingly, we deny the petition for writ of mandamus.[1]

/Lana Myers/
LANA MYERS
JUSTICE

Whitehill, J., dissenting

181028F.P05

---

[1] Amcad also argued below that any alleged forum-selection clause would be unenforceable here because the Carmack Amendment controls venue here. *See* 49 U.S.C. § 14706(d)(1)–(2). We express no opinion on the applicability of the Carmack Amendment.